**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RONTEZ MILES,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>THE NATIONAL FOOTBALL LEAGUE<br>and JOHN DOES 1-5, JOHN DOES 6-10,<br><br>　　　　　　Defendants. | Civil Action No. 2:19-cv-18327-CCC-MF<br><br>JUDGE CLAIRE C. CECCHI<br>JUDGE MARK FALK<br><br>**(ORAL ARGUMENT REQUESTED)**<br><br>**Motion Day: September 8, 2020** |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

---

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 848-8615

Stacey R. Eisenstein (*Pro Hac Vice*)
Nathan J. Oleson (*Pro Hac Vice*)
M. Elizabeth England (*Pro Hac Vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 887-4000

*Attorneys for Defendants*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES.................................................................................. ii

BACKGROUND .................................................................................................. 2

    A.     Plaintiff's Employment Under The NFL Collective Bargaining Agreement..........2

    B.     Plaintiff's Allegations .................................................................5

    C.     Procedural History .....................................................................6

ARGUMENT .........................................................................................................7

    I.     PLAINTIFF'S  STATE LAW CLAIMS ARE PREEMPTED BY THE LMRA .........................................................................................7

         A.     Plaintiff's Negligence Claim Is Preempted By The LMRA .......................8

         B.     Plaintiff's State Law Disability Claims Are Preempted By The LMRA ..........................................................................................13

    II.     PLAINTIFF'S CLAIMS ARE BARRED BY WORKERS' COMPENSATION EXCLUSIVITY ...............................................16

    III.     THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE LAD OR ADA............................................................20

         A.     Plaintiff's Amended Complaint Fails To Allege That He Exhausted His Administrative Remedies As Required By The ADA .......................20

         B.     Plaintiff's Amended Complaint Fails To State A Claim For Disability Discrimination Under the ADA Or The LAD .........................21

         C.     Plaintiff Fails To State A Claim For Failure To Accommodate ................22

         D.     Plaintiff's Amended Complaint Fails To State A Claim Against John Does 6-10 For Aiding And Abetting Discrimination........................23

CONCLUSION.....................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allis-Chalmers Corp. v. Lueck*,
    471 U.S. 202 (1985) ................................................................................... 7, 12

*Angst v. Mack Trucks, Inc.*,
    969 F.2d 1530 (3d Cir. 1992) ........................................................................ 7

*Antol v. Esposto*,
    100 F.3d 1111 (3d Cir. 1996) ...................................................................... 16

*Aponik v. Verizon Pa., Inc.*,
    106 F. Supp. 3d 619 (E.D. Pa. 2015) ...................................................... 17, 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................... 20

*Bagby v. Gen. Motors Corp.*,
    976 F.2d 919 (5th Cir. 1992) ...................................................................... 15

*Baker v. Farmers Elec. Coop., Inc.*,
    34 F.3d 274 (5th Cir. 1994) ........................................................................ 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................... 20

*Birch v. Wal-Mart Stores, Inc.*,
    No. 15-1296, 2015 WL 8490938 (D.N.J. Dec. 9, 2015) (Cecchi, J.) ................ 18

*Boldt v. N. States Power Co.*,
    904 F.3d 586 (8th Cir. 2018) ...................................................................... 15

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ........................................................................ 2

*Bustamante v. Tuliano*,
    591 A.2d 694 (N.J. Super. Ct. App. Div. 1991) ............................................. 19

*Cain v. Union Pac. R.R.*,
    No. 97 C 1443, 1999 U.S. Dist. LEXIS 20174 (N.D. Ill. Jan. 5, 2000) ............. 16

*Carluccio v. Parsons Inspection & Maint. Corp.*,
    No. 06-4354 (JLL), 2007 WL 1231758 (D.N.J. Apr. 24, 2007) ........................ 8

*Davis v. Johnson Controls, Inc.*,
    21 F.3d 866 (8th Cir. 1994) ........................................................................ 15

ii

*DeSantis v. N.J. Transit*,
   103 F. Supp. 3d 583 (D.N.J. 2015) ........................................................................... 24

*Duerson v. Nat'l Football League*,
   No. 12 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) ...................................... 10

*Dykes v. Se. Pa. Transp. Auth.*,
   68 F.3d 1564 (3d Cir. 1995) ....................................................................................... 2

*El-Sioufi v. St. Peter's Univ. Hosp.*,
   887 A.2d 1170 (N.J. Super. Ct. App. Div. 2005) ...................................................... 22

*Fermaintt ex rel. Estate of Lawlor v. McWane, Inc.*,
   694 F. Supp. 2d 339 (D.N.J. 2010) ........................................................................... 17

*Evans v. Ariz. Cardinals Football Club, LLC*,
   262 F. Supp. 3d 935 (N.D. Cal. 2017) ....................................................................... 19

*Fitzgerald v. Shore Mem'l Hosp.*,
   92 F. Supp. 3d 214 (D.N.J. 2015) ............................................................................. 23

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ...................................................................................... 20

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*,
   463 U.S. 1 (1983) ...................................................................................................... 12

*Freeman v. Duke Power Co.*,
   114 F. App'x 526 (4th Cir. 2004) .............................................................................. 14

*Gambrell v. Kansas City Chiefs Football Club, Inc.*,
   562 S.W.2d 163 (Mo. Ct. App. 1978) ................................................................. 17, 19

*Gillespie v. Janey*,
   No. 2:09-cv-00885 (SDW)(MCA), 2010 WL 777954 (D.N.J. Mar. 5, 2010), *aff'd*,
   441 F. App'x 890 (3d Cir. 2011) ............................................................................... 21

*Gutierrez v. TD Bank*,
   No. 11-5533 (JLL), 2012 WL 272807 (D.N.J. Jan. 27, 2012) .................................... 12

*Houston NFL Holding L.P. v. Ryans*,
   581 S.W.3d 900 (Tex. App. 2019), *appeal docketed*, No. 19-1020 (Tex. Nov. 15,
   2019) ......................................................................................................................... 13

*Hurley v. Atl. City Police Dep't*,
   174 F.3d 95 (3d Cir. 1999) ....................................................................................... 24

*Int'l Bhd. of Elec. Workers v. Hechler*,
   481 U.S. 851 (1987) ..................................................................................................... 9

*Kibler v. Roxbury Bd. of Educ.*,
   919 A.2d 878 (N.J. Super. Ct. App. Div. 2007) ........................................................ 18

*Koshatka v. Phila. Newspapers, Inc.*,
   762 F.2d 329 (3d Cir. 1985) ........................................................................................... 12

*Laidlow v. Hariton Mach. Co.*,
   790 A.2d 884 (N.J. 2002) ............................................................................................... 18

*Maher v. N.J. Transit Rail Ops., Inc.*,
   593 A.2d 750 (N.J. 1991) ...................................................................................... 8, 14, 15

*Mancini v. Twp. of Teaneck*,
   794 A.2d 185 (N.J. Super. Ct. App. Div. 2002) ............................................................ 22

*Maxwell v. National Football League*,
   No. CV 11-08394 (C.D. Cal. Dec. 8, 2011), slip op. ...................................................... 9

*McCray v. UNITE HERE*,
   No. 13-6540 (RBK/JS), 2014 WL 3519098 (D.N.J. July 16, 2014) ................................ 12

*McEwen v. UPMC Shadyside Presbyterian Hosp.*,
   No. 2:09-cv-1181, 2010 WL 4879195 (W.D. Pa. Nov. 23, 2010) ................................... 17

*Meggiolaro v. Lagniappe Pharmacy Servs.*,
   No. 2:16-cv-3407 (WJM), 2016 WL 5660432 (D.N.J. Sept. 29, 2016) ............................ 21

*Millison v. E.I. Du Pont de Nemours & Co.*,
   501 A.2d 505 (N.J. 1985) ............................................................................................... 19

*Oglesby v. RCA Corp.*,
   752 F.2d 272 (7th Cir. 1985) ......................................................................................... 11

*Opacity v. Aramark Corp.*,
   No. Civ.A.05CV5328(DMC), 2006 WL 1210531 (D.N.J. Apr. 28, 2006) ....................... 13

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993) ........................................................................................... 2

*Peoples v. Montclair State Univ.*,
   No. 15-5511 (CCC)(MF), 2018 WL 646076 (D.N.J. Jan. 30, 2018) (Cecchi, J.) ......... 23, 24

*Pilkington v. United Airlines*,
   112 F.3d 1532 (11th Cir. 1997) ...................................................................................... 11

*Prima v. Darden Rests., Inc.*,
   78 F. Supp. 2d 337 (D.N.J. 2000) .................................................................................... 2

*Pro-Football, Inc. v. Tupa*,
   51 A.3d 544 (Md. 2012) ................................................................................................. 17

*Reece v. Hous. Lighting & Power Co.*,
   79 F.3d 485 (5th Cir. 1996) ........................................................................................... 15

*Rich v. Verizon N.J. Inc.*,
  No. 16-1895 (FLW) (DEA), 2017 WL 6314110 (D.N.J. Dec. 11, 2017) ........................................ 22

*Richter v. Oakland Bd. of Educ.*,
  211 A.3d 1226 (N.J. Super. Ct. App. Div. 2019) .................................................. 22

*Robinson v. Dalton*,
  107 F.3d 1018 (3d Cir. 1997) ............................................................. 21

*Robinson v. Vivirito*,
  86 A.3d 119 (N.J. 2014) .................................................................... 8

*Royster v. N.J. State Police*,
  152 A.3d 900 (N.J. 2017) .................................................................. 23

*Rutledge v. Int'l Longshoremen's Ass'n*,
  701 F. App'x 156 (3d Cir. 2017) ........................................................ 13

*Seborowski v. Pittsburgh Press Co.*,
  188 F.3d 163 (3d Cir. 1999) .............................................................. 12

*Estate of Sellino v. Pinto Bros. Disposal, LLC*,
  No. A-2064-12T1, 2013 WL 5300076 (N.J. Super. Ct. App. Div. Sept. 23, 2013) ............ 19

*Semple v. Donahoe*,
  No. 13-5198 (ES), 2014 WL 4798727 (D.N.J. Sept. 25, 2014) ............................... 23

*Shorter v. Quality Carrier*,
  No. 14-4906 (RBK/JS), 2014 WL 7177330 (D.N.J. Dec. 16, 2014) ........................... 18

*Smith v. Blue Cross Blue Shield of Kan., Inc.*,
  102 F.3d 1075 (10th Cir. 1996) ..................................................... 18, 22

*Smith v. Houston Oilers*,
  87 F.3d 717 (5th Cir. 1996) ............................................................. 16

*Snyder v. Dietz & Watson, Inc.*,
  837 F. Supp. 2d 428 (D.N.J. 2011) ................................................. 7, 9, 12

*Stringer v. Nat'l Football League*,
  474 F. Supp. 2d 894 (S.D. Ohio 2007) ................................................... 10

*Sullivan v. Sovereign Bancorp., Inc.*,
  No. Civ. A. 99-5990. 2001 WL 34883989 (D.N.J. Jan. 19, 2001), *aff'd*, 33 F. App'x
  640 (3d Cir. 2002) ...................................................................... 2

*Tarr v. Ciasulli*,
  853 A.2d 921 (N.J. 2004) ............................................................... 24

*Tate v. City of Albuquerque*,
  92 F. Supp. 3d 1152 (D.N.M. 2015) ...................................................... 14

v

*Taylor v. Phoenixville Sch. Dist.*,
    184 F.3d 296 (3d Cir. 1999) ............................................................... 21

*Teamsters Local 174 v. Lucas Flour Co.*,
    369 U.S. 95 (1962) ............................................................................ 7

*Thomas v. Cty. of Camden*,
    902 A.2d 327 (N.J. Super. Ct. App. Div. 2006) ...................... 13, 14

*Tourtellotte v. Eli Lilly & Co.*,
    636 F. App'x 831 (3d Cir. 2016) ..................................................... 24

*Van Dunk v. Reckson Assocs. Realty Corp.*,
    45 A.3d 965 (N.J. 2012) .................................................................. 19

*Victor v. State*,
    952 A.2d 493 (N.J. Super. Ct. App. Div. 2008), *aff'd in relevant part*, 4 A.3d 126
    (N.J. 2010) ................................................................................ 21, 22

*Viscik v. Fowler Equip. Co.*,
    800 A.2d 826 (N.J. 2002) ................................................................ 14

*Voilas v. GMC*,
    170 F.3d 367 (3d Cir. 1999) ........................................................... 14

*Williams v. Nat'l Football League*,
    582 F.3d 863 (8th Cir. 2009) ............................................................ 9

## STATUTES

29 U.S.C. § 185(a) ("Labor Management Relations Act") ..................... *passim*

42 U.S.C. § 2000e-5(e)(1) ................................................................... 20

N.J. Stat. 34:15-1 ................................................................................ 17

N.J. Stat. Ann. § 34:15-8 ..................................................................... 16

## OTHER AUTHORITIES

2 Larson's Workers' Compensation Law § 22.04 ............................... 17

Fed. R. Civ. P. Rule 12(b)(6) .............................................................. 20

## INTRODUCTION

Plaintiff Rontez Miles ("Plaintiff"), a professional football player, filed this action against the National Football League ("NFL") for personal injuries allegedly sustained while playing in an NFL game.  Plaintiff contends that the NFL should have allowed him to wear a tinted face shield, despite his failure to follow the League's collectively-bargained rules to obtain approval to use this equipment.  The NFL moved to dismiss, because Plaintiff's claims were preempted by the Labor Management Relations Act and barred by workers' compensation exclusivity, and his complaint failed to state a claim for disability discrimination under the New Jersey Law Against Discrimination ("LAD") or the Americans with Disabilities Act ("ADA").

This Court granted leave to amend the complaint based upon Plaintiff's claim that "new facts" had come to light.  Yet the crux of these new allegations—that the NFL "waived any clause of the CBA… requiring Plaintiff to obtain specific permission from the NFL to use [a] protective shield while practicing or playing," (Am. Compl. ¶¶ 32, 33, 80, 81) and that it had a duty to protect Plaintiff from injury in the context of his employment under the CBA (*Id.* ¶¶ 70-72) —only serves to further confirm that his claims must be dismissed.  It is well-established that federal labor law preempts state law claims, such as those made here, that are "inextricably intertwined" with the terms of a collective bargaining agreement.  And even if that were not the case, the sole remedy for Plaintiff's occupational injury claims would lie under the state workers' compensation system.  Plaintiff's disability claims likewise fail, because he has yet to plead facts necessary to support such claims. And Plaintiff's "new" claims—his request that the Court declare that the NFL has waived certain CBA rights and determine the conduct he complains of is outside of the scope of the CBA—plainly fail under the same preemption principles that doom his other claims.  Plaintiff's Amended Complaint thus fails to cure the deficiencies in his original

1

pleading, and instead merely confirms that the entire complaint should be dismissed with prejudice.

## BACKGROUND

### A.      Plaintiff's Employment Under The NFL Collective Bargaining Agreement

Plaintiff is a professional football player employed by the New York Jets ("Jets").  Am. Compl. ¶¶ 7-8, 12.  The NFL is a professional sports league consisting of thirty-two Clubs, including the Jets.  *Id.* ¶¶ 3, 5.  The National Football League Players Association ("NFLPA") is the exclusive bargaining representative of all NFL players, including Plaintiff.  *Id.* ¶ 7.

Plaintiff, the Jets, and the NFL are all bound by a collective bargaining agreement ("CBA") governing the terms and conditions of employment of NFL players.  *Id.* ¶ 8.[1]  The CBA "represents the complete understanding of the parties on all subjects covered herein, and there will be no change in the terms and conditions of this Agreement without mutual consent."

---

[1] The court may consider the CBA and Official Playing Rules because Plaintiff expressly refers to and relies on them in his Amended Complaint, and because they are integral to Plaintiff's allegations that the NFL "waived" provisions or requirements in the CBA or the Official Playing Rules.  *See, e.g.,* Am. Compl. ¶ 8 (alleging that Plaintiff's employment "was in accordance with a collective bargaining agreement between the NFL and the NFLPA"); ¶¶ 9-11 (referencing NFL rules, regulations, policies and procedures, including uniform and equipment rules); ¶¶ 32-34.  In resolving a motion to dismiss, courts may analyze documents that are "integral to or explicitly relied upon in the complaint" without converting the motion into one for summary judgment.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted); *see also Prima v. Darden Rests., Inc.*, 78 F. Supp. 2d 337, 342-43 (D.N.J. 2000) (considering a commercial at issue in an action for wrongful imitation as "referred to in the complaint"); *Sullivan v. Sovereign Bancorp., Inc.*, No. Civ. A. 99-5990. 2001 WL 34883989, at *4 (D.N.J. Jan. 19, 2001) (incorporating merger agreement and its affiliated agreement based on plaintiffs' "frequent reference" to the documents and their relation to plaintiffs' theory of the case), *aff'd*, 33 F. App'x 640 (3d Cir. 2002).  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Dykes v. Se. Pa. Transp. Auth.*, 68 F.3d 1564, 1566 n.3 (3d Cir. 1995) (considering collective bargaining agreement omitted from the plaintiff's complaint on motion to dismiss where the complaint, "while framed in constitutional terms, grows out of an alleged violation of the CBA").

Attachment A to the Declaration of Lawrence P. Ferazani, Jr. in Support of Notice of Removal (ECF No 1-2)) ("CBA"), Art. 2, § 4(a).  The CBA governs the respective rights and responsibilities of the NFL, the Clubs, the NFLPA, and the players with respect to, among other subjects, player health and safety, player attire and equipment, and the remedies and benefits available to players in the event of an injury sustained while performing services under an NFL Player Contract, including during the course of an NFL game.  Am. Compl. ¶¶ 8-9; *see, e.g.,* CBA, Art. 41, § 1, Art. 51, § 2.  The CBA also requires all NFL players and Clubs to use the standard NFL Player Contract, which is incorporated into the agreement.  *See* CBA Art. 4, § 1, 70 § 7, App. A ("NFL Player Contract").

The CBA obligates all NFL players and Clubs to follow the rules promulgated by the NFL concerning the operation of the game.  *See* Am. Compl. ¶¶ 5, 9 (alleging that the NFL "promulgated rules, regulations, policies and procedures controlling most aspects of each teams' business conduct, their players and staff," including rules "which players such as Plaintiff are required to follow in order to play football in the NFL"); CBA Art. 1 (defining "NFL Rules"); NFL Player Contract ¶ 14.  The NFL Rules set forth detailed standards for player equipment and uniforms.  *See* 2017 Official Playing Rules of the NFL, Exhibit 1 to the Declaration of Lawrence P. Ferazani Jr. (ECF No. 4-3) ("Official Playing Rules").  Relevant here, the Official Playing Rules specifically address the type of equipment, including eye shields, that players may wear during games, as well as the procedures that players must follow to obtain approval to use such equipment:

> **Item 1. Helmet, Face Protectors.**  Helmet with all points of the chin strap (white only) fastened and facemask attached.  Facemasks must not be more than ⅝-inch in diameter and must be made of rounded material; transparent materials are prohibited. Clear (transparent) plastic eye shields are optional. ***Tinted eye shields may be worn only after the League office is supplied with appropriate medical***

> ***documentation and approval is subsequently granted.*** The League office has
> final approval.

*See* Official Playing Rules, Rule 5, Section 4, Article 3 (emphasis added).  The Official Playing

Rules also describe the consequences for noncompliance with the NFL's uniform and equipment

standards.  For violations "discovered during pregame warm-ups or at other times prior to the

game, player will be advised to make appropriate correction; if the violation is not corrected,

player will not be permitted to enter the game."  *See* Official Playing Rules, Rule 5, Section 4,

"Penalties."

The CBA also contains numerous provisions that expressly govern the parties' rights and

obligations regarding player health, safety, and medical care.  For example, the CBA includes

detailed provisions regarding players' rights to medical care and treatment, and the obligations of

Clubs and their doctors in the provision of this care.  *See* CBA Art. 39, §§ 1-2.  It also establishes

a joint "Accountability and Care Committee" that provides "advice and guidance regarding the

provision of preventative, medical, surgical, and rehabilitative care for players" (CBA Art. 39,

§ 3), as well as a "Joint Committee on Player Safety and Welfare" that is tasked with

responsibility and oversight for "any subject related to player safety and welfare," including

"playing equipment" and "playing rules."  CBA Art. 50, § 1.

The CBA mandates that "[a]ny dispute" "involving the interpretation of, application of,

or compliance with, any provision of" the CBA, the NFL Player Contract, and "any applicable

provision of the NFL Constitution and Bylaws or [the Official Playing Rules] pertaining to the

terms and conditions of employment of NFL players" must "be resolved exclusively in

accordance with" bargained-for arbitration procedures.  CBA Art. 43, § 1.

### B.    Plaintiff's Allegations

Plaintiff alleges that he suffers from a medical condition known as alopecia areata, which he claims causes him to experience ocular photosensitivity and photophobia and limits his ability to see well in sunlight or artificial light.  Am. Compl. ¶¶ 13-15, 41.  Plaintiff asserts that in order to reduce the effects of the ocular photosensitivity and photophobia while playing football, he requires the use of a protective shield in conjunction with his helmet and face guard.  *Id.* ¶ 23.

The Amended Complaint alleges that before the start of an August 19, 2017 preseason game against the Detroit Lions, an equipment judge refused to permit him to play in the game unless he removed the shield.  *Id.* ¶¶ 35-36.  Plaintiff admits that he did not seek an accommodation through the process required by the Official Playing Rules, which required him to submit medical documentation establishing the need for a tinted eye shield.  *See generally id.* ¶¶ 5-45.  Instead, Plaintiff alleges that "[t]hrough the actions/inactions" of NFL equipment judges, the NFL "tacitly or implicitly approved Plaintiff's use of the protective shield" and "waived any clause of the CBA or other policy, procedure or rule prohibiting Plaintiff from using the protective shield" or "requiring Plaintiff to obtain specific permission from the NFL to use the protective shield."  *Id.* ¶¶ 32-34.

Plaintiff played in the game without the shield and alleges that, "due to the lack of protection from the stadium lights, [he] did not see an opposing player approach, and hence, was unable to take defensive maneuvers."[2]  Am. Compl. ¶¶ 45-46.  He states that, as a result, "[t]he opposing player [made contact with] Plaintiff's face causing severe and significant injury," including a "broken orbital bone of the right eye."  *Id.* ¶¶ 47-48.

---

[2] In his original complaint, Plaintiff alleged his injury was caused by the "lack of protection from the bright sun."  *See* Compl. ¶ 28 (ECF No. 1-1).  However, the August 19, 2017 preseason game was played at night at Ford Field, an indoor stadium.

### C.     Procedural History

Plaintiff filed this action in the Superior Court of New Jersey two years after his injury, asserting claims for (1) disability discrimination under the New Jersey Law Against Discrimination ("LAD"), (2) failure to provide a reasonable accommodation under the LAD and the Americans with Disabilities Act ("ADA"), and (3) negligence.  *See* Compl. (ECF No. 1-1).  The NFL timely removed the case to this Court on the basis of federal question jurisdiction and moved to dismiss the Complaint in its entirety.  *See* ECF Nos. 1, 4.  In his Opposition to the NFL's Motion to Dismiss, Plaintiff requested leave to amend his Complaint because it was filed under the more lenient state court notice pleading standard and because additional "relevant" facts came to light after he filed the original Complaint.  *See* ECF No. 15.  Based on Plaintiff's representations, the Court administratively terminated the NFL's Motion to Dismiss and granted Plaintiff leave to amend his Complaint.  ECF No. 21.

On June 23, 2020, Plaintiff filed an Amended Complaint asserting a handful of new factual allegations that Plaintiff had attempted to introduce improperly through his Opposition to the NFL's Motion to Dismiss.  *See* ECF No. 22.  As in his initial Complaint, Plaintiff claims that his medical condition constitutes a "disability" and that he sought a "reasonable accommodation" (the use of the protective shield) to enable him to "perform the requirements of his job."  Am. Compl. ¶¶ 42-43.  By directing him to remove the shield, Plaintiff claims that the NFL "through its official denied Plaintiff a reasonable accommodation" in violation of the LAD and the ADA. *Id.* ¶¶ 44, 63-68.  Plaintiff further contends that the NFL, through the conduct of its officials, "breached its duty of care owed to Plaintiff to help him avoid injury while playing football" and is liable under a theory of *respondeat superior*.  *Id.*  ¶¶ 70, 78.  Plaintiff claims that, as a result of the NFL's alleged conduct, he "suffered injury including but not limited to severe personal injury, severe emotional distress and economic/pecuniary injuries."  Am. Compl. ¶¶ 62, 68; *see*

*also id.* ¶ 71 (alleging that he suffered "severe and permanent personal injuries" as a result of the NFL's negligence).

The Amended Complaint also purports to assert three new claims: (1) that the NFL "waived" any CBA provisions or NFL rules concerning Plaintiff's use of a protective shield by permitting Plaintiff to use his protective shield for three seasons without specific approval by the league (Am. Compl. ¶¶ 79-81); (2) that Plaintiff's claims "do not require interpretation of the CBA" and "are not dependent on an interpretation of the CBA concerning general player safety and health" (Am. Compl. ¶¶ 82-84); and (3) that members of NFL upper management (John Does 6-10) "aided and abetted the NFL in violating the LAD and the ADA" (Am. Compl. ¶¶ 85-90).

## ARGUMENT

### I.    PLAINTIFF'S  STATE LAW CLAIMS ARE PREEMPTED BY THE LMRA

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), preempts state law claims where, as here, the claims are "substantially dependent" on, or "inextricably intertwined" with, the terms of a collective bargaining agreement.  *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11, 213, 220 (1985); *Teamsters Local 174 v. Lucas Flour Co.,* 369 U.S. 95, 103 (1962).  "The question in a preemption analysis is not whether the source of a cause of action is state-law," but rather "whether resolution of the cause of action requires interpretation of a collective bargaining agreement."  *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 439 (D.N.J. 2011); *see also Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1536 (3d Cir. 1992) (federal law preempts state law "if the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement" (citation omitted)).  This includes documents incorporated by reference into the CBA, such as the CBA-prescribed NFL Player Contract and the Official

Playing Rules. *See Maher v. N.J. Transit Rail Operations, Inc.*, 593 A.2d 750, 763-64 (N.J. 1991) (state law discrimination claims preempted where resolution of the claims depended on safety rules incorporated into the CBA); *Carluccio v. Parsons Inspection & Maint. Corp.*, No. 06-4354 (JLL), 2007 WL 1231758, at *4 (D.N.J. Apr. 24, 2007) (state law claim preempted where resolution was dependent on analysis of defendant's "policies and procedures," which were incorporated by reference into the CBA).

Plaintiff's Amended Complaint asks this Court to determine the parties' rights and obligations under their collective bargaining agreement, both with respect to whether the NFL owed (and breached) a duty of care to Plaintiff, and whether Plaintiff can establish a valid claim of disability discrimination in light of the Official Playing Rules applicable to his request to wear a face shield. Specifically, Plaintiff's claims concern an injury that he asserts was caused when, in accordance with the Official Playing Rules, an NFL equipment judge refused to allow him to wear an eye shield during an NFL game. Because these allegations are inextricably intertwined with the CBA and incorporated Official Playing Rules, the LMRA preempts Plaintiff's state law claims and requires that this dispute be resolved exclusively through the arbitration procedures set forth in the CBA.

### A.   Plaintiff's Negligence Claim Is Preempted By The LMRA

To establish a claim for negligence, Plaintiff must prove that the NFL owed him a duty of care and breached that duty of care when the NFL equipment judge responsible for enforcing the rules refused to permit him to play in the game with his protective eye shield. *Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014) (negligence claim requires establishment of a duty of care owed by the defendant to the plaintiff and a breach of that duty). Section 301 preempts negligence claims where, as here, the court must interpret the CBA to determine the "nature and scope of [any] duty" of care that the defendant agreed to assume and whether the defendant, by

its actions, breached that duty.  *See Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 862

(1987); *Snyder*, 837 F. Supp. 2d at 442-43 (plaintiff's state law tort claims preempted where

evaluation of the parties' respective rights and expectations required interpretation of the CBA).

Plaintiff contends that the NFL maintains a duty of care "to help him avoid injury while

playing football" and breached that duty when an equipment judge prohibited him from wearing

a protective shield pursuant to League rules.  Am. Compl. ¶¶ 70-78.  But whether the NFL has a

duty to "help [Plaintiff] avoid injury," if any, in this context, can only be ascertained by

interpreting provisions in the CBA and Official Playing Rules, which carefully allocate

responsibilities for player safety and medical care among the NFL, the NFLPA, the Clubs, the

Club physicians, and the players.

Numerous courts have found negligence claims like Plaintiff's preempted where NFL

players have alleged that the League breached a "duty of care" that purportedly resulted in

personal injury.  For example, in *Maxwell v. National Football League*, No. CV 11-08394 (C.D.

Cal. Dec. 8, 2011) (ECF No. 58), slip op. at 1-2, the court held that resolution of a player's

negligence claim based on game-related injuries was "inextricably intertwined with and

substantially dependent upon an analysis of certain CBA provisions imposing duties on the clubs

with respect to the medical care and treatment of NFL players."  Ex. 1 to R. Hernandez

Declaration (ECF No. 4-5).  Noting that "[t]he CBA places primary responsibility for identifying

[] physical conditions on the team physicians," the court concluded that the claim was preempted

because those provisions, as well as provisions relating to the Club athletic trainers, must be

considered to determine "the degree of care owed by the NFL and how it relates to the NFL's

alleged failure" to satisfy that duty.  *Id.*; *see also Williams v. Nat'l Football League*, 582 F.3d

863, 881 (8th Cir. 2009) (finding negligence claims against the NFL for allegedly failing to warn

players about the harmful effects of a dietary supplement preempted where the duty of care could

not be determined "without examining the parties' legal relationship and expectations as

established by the CBA and the [Steroid] Policy."); *Duerson v. Nat'l Football League*, No. 12 C

2513, 2012 WL 1658353, at *3-4 (N.D. Ill. May 11, 2012) (scope of NFL's liability for

negligence claims based on player injuries requires interpretation of CBA provisions to

determine whether they "impose a duty on the NFL's *clubs* to monitor a player's health and

fitness to continue to play football," allowing the NFL, in turn, to "reasonably exercise a lower

standard of care."); *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894, 910 (S.D. Ohio

2007) (holding negligence claims preempted because CBA interpretation was required to

determine if any provisions "diminished" the "degree of care" that the NFL might otherwise owe

to the player).

The same principles apply here.  To resolve Plaintiff's negligence claim, the provisions of

the CBA must be interpreted to determine the NFL's duty to Plaintiff (if any) in light of the

CBA's allocation of responsibilities between the Union, the Club, the Club physician, the Joint

Committee, the Accountability and Care Committee, and Plaintiff himself.  For example, the

Court must determine whether the NFL assumed and then breached a duty that the CBA and the

Official Playing Rules specifically delegate to the Clubs or, instead "reasonably rel[ied] on the

club[]" and the Player to request an exemption for a protective eye shield if one was necessary.

*Duerson*, 2012 WL 1658353, at *4.  To do so, the Court must interpret not only the specific rules

governing the use of tinted visors, but also those provisions of the CBA expressly assigning

responsibility for player health and safety issues to other parties.  This includes Article 50 of the

CBA, which provides for a "Joint Committee on Player Safety and Welfare" comprised of Club

and NFLPA representatives responsible for oversight of "any subject related to player safety and

welfare," including "playing equipment" and "playing rules, " CBA Art. 50, § 1, as well as Article 39 discussing the role of the Accountability and Care committee and assigning medical care responsibilities to Club physicians and athletic trainers. *See, e.g.,* CBA Art. 39, §§ 1-3; App. A ¶ 9.[3]

Plaintiff attempts to plead around preemption by contending that his claims do not require interpretation of the CBA. Am. Compl. ¶¶ 82-84. But Plaintiff's Amended Complaint merely confirms that Plaintiff's claims are preempted, and cannot, as a matter of law, preclude dismissal on preemption grounds.[4] Indeed, by asserting in Count Four that Defendants "waived any provision or requirement in the Collective Bargaining Agreement, the [Official Playing] Rules and other related documents," Am. Compl. ¶¶ 79-81, Plaintiff concedes that those provisions directly govern his claims here.

Plaintiff cannot avoid preemption simply by asking this Court, rather than the collectively bargained-for arbitrator, to interpret these CBA provisions. To the contrary, "a central tenet of federal labor-contract law under § 301 [is] that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance," and once a claim is deemed

---

[3] The CBA and incorporated NFL Player Contract also comprehensively address the remedies available to players injured while playing football, which include: (1) the right to medical and rehabilitative care (CBA Art. 39; NFL Player Contract ¶ 9); (2) the guarantee of minimum workers' compensation benefits (CBA Art. 41); (3) the player's right to continued payment of his salary while injured for the duration of the season of injury (CBA Art. 44; NFL Player Contract ¶ 9); and (4) certain protection against the loss of salary beyond the season of injury (CBA Art. 45). These provisions, too, must be construed to determine what damages, if any, Plaintiff would be entitled to.

[4] Because "plaintiffs often [attempt] to avoid federal jurisdiction under § 301 by framing their complaints in terms of…diverse state law theories," *Pilkington v. United Airlines*, 112 F.3d 1532, 1541 (11th Cir. 1997) (citation omitted), "[a] federal court need not blind itself to the real gravamen of a claim because [the] plaintiff tenders a blindfold in the form of artificial characterizations in its complaint," *Oglesby v. RCA Corp.*, 752 F.2d 272, 278 (7th Cir. 1985) (quotation and citation omitted).

preempted, it must be dismissed to "preserve[] the central role of arbitration in our system of industrial self-government." *Allis-Chalmers*, 471 U.S. at 219-20 (citation omitted); *Snyder*, 837 F. Supp. 2d at 440-44 (dismissing state law claims after determining that they were preempted). These purposes are "so powerful as to displace entirely any state cause of action" that implicates the preemption principles of Section 301. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.,* 463 U.S. 1, 23 (1983).

Here, Article 43 of the CBA broadly provides that any "dispute" "involving the interpretation of, application of, or compliance with, any provision of" the CBA and incorporated Official Playing Rules must be resolved exclusively in accordance with bargained-for arbitration procedures. CBA Art. 43, § 1. Plaintiff's claims, which ask whether the NFL may "waive" its rights under the CBA and Official Playing Rules and whether the conduct alleged falls within the scope of the CBA and Official Playing Rules, plainly constitute such a dispute and are thus preempted. *See* Am. Compl. ¶¶ 79-81; *Allis-Chambers,* 471 U.S. at 219-20. As with Plaintiff's negligence claims, both counts accordingly must be dismissed with prejudice.[5] *See Koshatka v. Phila. Newspapers, Inc.*, 762 F.2d 329, 334 (3d Cir. 1985) ("It is well established that in order to maintain a § 301 action on a labor contract, an employee must first exhaust the grievance and arbitration provisions of a contract"); *Seborowski v. Pittsburgh Press Co.*, 188 F.3d 163, 168 (3d Cir. 1999) (stating that employees "must at least attempt to exhaust exclusive grievance and

---

[5] Even if these claims somehow were not preempted, Counts Four and Five are not legally cognizable claims and nonetheless should be dismissed. Plaintiff recites no legal principle that would support the requested relief in Counts Four and Five, much less one that would survive application of the preemption rules in Section 301 of the LMRA. *See McCray v. UNITE HERE*, No. 13-6540 (RBK/JS), 2014 WL 3519098, at *8 (D.N.J. July 16, 2014) (dismissing claims where none of the plaintiff's assertions supported any cause of action); *Gutierrez v. TD Bank*, No. 11-5533 (JLL), 2012 WL 272807, at *11-13 (D.N.J. Jan. 27, 2012) (dismissing claims that were not cognizable as a matter of law and where the plaintiffs failed to cite to any federal or state law under which they asserted such causes of action).

arbitration procedures established by the bargaining agreement."); *see also Houston NFL Holding L.P. v. Ryans*, 581 S.W.3d 900, 910 (Tex. App. 2019) (holding that NFL player's premises-liability claim was subject to arbitration because it involved interpretation of NFL Playing Field Specifications, which were part of Official Playing Rules), *appeal docketed*, No. 19-1020 (Tex. Nov. 15, 2019).

### B.    Plaintiff's State Law Disability Claims Are Preempted By The LMRA

Plaintiff's state law disability discrimination and failure to accommodate claims also cannot be resolved without interpreting the CBA and the incorporated Official Playing Rules. Although courts have held that the LMRA does not preempt LAD claims involving solely "factual questions that do not turn on an interpretation of the CBA," the Third Circuit has expressly recognized that the LMRA will preempt LAD claims whose resolution requires interpretation of a CBA. *Rutledge v. Int'l Longshoremen's Ass'n*, 701 F. App'x 156, 162 n.2 (3d Cir. 2017) (noting, in context of the LAD, that "construction of a CBA term may prove necessary in some contexts to determine a plaintiff's qualification for a particular position"); *see also Opacity v. Aramark Corp.*, No. Civ.A.05CV5328(DMC), 2006 WL 1210531, at *1, *3-4 (D.N.J. Apr. 28, 2006) (finding LAD claim preempted because resolution of plaintiff's claims required interpretation of seniority provisions).  Here, Plaintiff's LAD claims, which are based on the same set of facts as his negligence claim, indisputably require interpretation of the CBA and the incorporated Official Playing Rules.

As a threshold matter, Plaintiff's discrimination claims depends on his allegation that the NFL acted as his "employer."  *See Thomas v. Cty. of Camden*, 902 A.2d 327, 334 (N.J. Super. Ct. App. Div. 2006) ("the lack of an employment relationship between the plaintiff and the defendant will preclude liability" under the LAD).  The NFL Player Contract entered into by all NFL Players and negotiated with the NFLPA, expressly states that the *Club,* and *not the NFL*, is

13

the Player's employer.  *See* CBA App. A ¶¶ 2, 14.  As a result, to determine whether Plaintiff is entitled to bring a disability claim against the NFL, the Court must address the legal effect of the collectively-bargained Player Contract and interpret the CBA to determine whether there is a "legally recognizable employment relationship between" Plaintiff and the NFL for purposes of the LAD.  *Thomas*, 902 A.2d at 334; *Freeman v. Duke Power Co.*, 114 F. App'x 526, 532 (4th Cir. 2004) (finding wrongful discharge claim preempted where analysis of CBA was required to determine "what type of employment relationship existed" between the parties); *see also Tate v. City of Albuquerque*, 92 F. Supp. 3d 1152, 1154 (D.N.M. 2015) (finding state law claims preempted "because any evaluation of the totality of the employment relationship in this case will necessarily involve substantial construction of the CBA").

On the merits, the Court also would need to analyze the CBA and the incorporated Official Playing Rules to determine whether the NFL had a legitimate, non-discriminatory reason for its alleged refusal to permit Plaintiff to wear the shield.  *See Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833 (N.J. 2002).  The New Jersey Supreme Court's decision in *Maher v. New Jersey Transit Rail Operations, Inc.* is controlling.  593 A.2d at 763-64.  In *Maher*, the plaintiff, who was legally blind in one eye, claimed that his employer violated the LAD by refusing to exempt him from a safety rule requiring him to wear protective eyewear at all times while on duty.  *Id.* at 753.  The Court held that the Railway Labor Act, which has the same preemptive force as the LMRA,[6] preempted the LAD claim.  *Maher*, 593 A.2d at 764.  The New Jersey Supreme Court reasoned that evaluation of the employer's argument that it was justified in refusing to allow the employee to return to work unless he complied with the safety rule required consideration of the

---

[6] *Voilas v. GMC*, 170 F.3d 367, 375 (3d Cir. 1999) (explaining that the standards for preemption under the RLA and LMRA are "virtually identical" (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994))).

14

employer's "conduct in following provisions of the collective-bargaining agreement." *Id.* at 764; *see also Boldt v. N. States Power Co.*, 904 F.3d 586, 593 (8th Cir. 2018) (holding that resolution of the plaintiff's disability discrimination claim depended on whether the actions the employer took "'were required according to' its interpretation of the collective-bargaining agreement and its fitness-for-duty policy"); *Reece v. Hous. Lighting & Power Co.*, 79 F.3d 485, 487 (5th Cir. 1996) (finding discrimination claims preempted because, when the plaintiff attempts to show that the employer's reason is pretextual, "the CBA would have to be interpreted because [the plaintiff] would have to challenge [the defendant's] rights under the CBA").

Here, too, resolving Plaintiff's disability discrimination claim will necessarily require consideration of Plaintiff's obligation to seek approval for his accommodation under the Official Playing Rules, whether the NFL was justified in relying on these Official Playing Rules, and whether the NFL "waived" its right to enforce them under the CBA. *See* Am. Compl. ¶¶ 32-34. Because each of these issues "obviously require[s] an interpretation of the CBA" to resolve Plaintiff's LAD claim, it is preempted. *Bagby v. Gen. Motors Corp.*, 976 F.2d 919, 921-22 (5th Cir. 1992); *see also, e.g., Maher*, 593 A.2d at 763-64 (disability claim preempted where assessment of employer's legitimate, non-discriminatory reason requires evaluation of CBA rights and responsibilities).

Plaintiff's failure to accommodate claim, which requires him to demonstrate that he requested a reasonable accommodation, is similarly preempted. The LMRA preempts failure to accommodate claims where, as here, their resolution requires the court to determine the employer's obligations under the collective bargaining agreement with respect to making accommodations. *See, e.g., Davis v. Johnson Controls, Inc.*, 21 F.3d 866, 868 (8th Cir. 1994) (LMRA preempted failure to accommodate claim that was directly related to the plaintiff's

supervisor's authority under the CBA to make accommodations); *Cain v. Union Pac. R.R.*, No. 97 C 1443, 1999 U.S. Dist. LEXIS 20174, at *7 (N.D. Ill. Jan. 5, 2000) (employee's failure to accommodate claim preempted because any accommodation must be made in accordance with collective bargaining agreement requirements relating to seniority).  As with his other claims, Plaintiff cannot establish his failure to accommodate claim without interpreting the Official Playing Rules governing the process for obtaining approval to wear a tinted visor.  Those Official Playing Rules provide that tinted eye shields "may be worn only after the League office is supplied with appropriate medical documentation and approval is subsequently granted."  *See* Official Playing Rules, Rule 5, Section 4, Art. 3.  Accordingly, this claim, too, must be dismissed.[7]

## II.   PLAINTIFF'S CLAIMS ARE BARRED BY WORKERS' COMPENSATION EXCLUSIVITY

The New Jersey Workers' Compensation Act ("WCA"), which provides the "exclusive remedy" for the type of workplace injury alleged here, further bars Plaintiff's claims.  *See* N.J. Stat. Ann. § 34:15-8.  The workers' compensation system involves a "trade-off whereby employees relinquish their right to pursue common-law remedies in exchange for automatic entitlement to certain, but reduced, benefits whenever they suffer injuries by accident arising out of and in the course of employment."  *Fermaintt ex rel. Estate of Lawlor v. McWane, Inc.*, 694 F.

---

[7]   Plaintiff's claim that certain, unnamed members of NFL upper management are liable for "aid[ing] and abet[ting]" the alleged LAD violations (Am. Compl. ¶ 88) does not affect a finding of preemption.  It is well-settled that a party need not be a signatory to a collective bargaining agreement for claims against that party to be preempted by the LMRA.  *See, e.g.*, *Antol v. Esposto*, 100 F.3d 1111, 1117-18, 1121 (3d Cir. 1996) (wage law claims against individuals who were not parties to the CBA were preempted by the LMRA); *Baker v. Farmers Elec. Coop., Inc.*, 34 F.3d 274, 282-84 (5th Cir. 1994) ("[C]ourts have governed their determinations on ... preemption by the necessity of referring to a CBA for resolution of the claim rather than by the individual status of the defendant … .");  *Smith v. Houston Oilers*, 87 F.3d 717, 721 (5th Cir. 1996) (finding state law claims against NFL team officials preempted).

Supp. 2d 339, 344 (D.N.J. 2010) (citation omitted).  Because Plaintiff alleges that the NFL is his

"employer," his claims are subject to the workers' compensation exclusivity bar.

On its face, Plaintiff's Amended Complaint establishes that his claims derive solely from

injuries sustained "by accident" and "in the course and scope of his employment"—he asserts

that he was injured by colliding with an opposing player during a play in a preseason game.  Am.

Compl. ¶¶ 46-47, 62, 68, 71-72.  These are precisely the types of workplace injuries that are

subject to the exclusive jurisdiction of the workers' compensation system.  *See, e.g.*, N.J. Stat.

34:15-1; *Pro-Football, Inc. v. Tupa*, 51 A.3d 544, 552 (Md. 2012) (holding that NFL player's

injury to his back during warm-ups was an accidental injury incurred in the course and scope of

employment); *Gambrell v. Kansas City Chiefs Football Club, Inc.*, 562 S.W.2d 163, 164, 168

(Mo. Ct. App. 1978) (holding that NFL player's claims relating to injuries suffered when player

was tackled in an exhibition football game were "squarely within the ambit" of the workers'

compensation act); 2 LARSON'S WORKERS' COMPENSATION LAW § 22.04 (noting that injuries in

professional sports "are so routinely treated as compensable" that they "seldom appear in

reported appellate decisions").

Plaintiff cannot avoid the exclusivity bar by cloaking his personal injury claims in terms

of disability discrimination or failure to accommodate.  First, the ADA does not permit the

recovery Plaintiff seeks, which is essentially personal injury damages stemming from the NFL's

alleged failure to accommodate his claimed disability.  *See, e.g.*, *Aponik v. Verizon Pa., Inc.*, 106

F. Supp. 3d 619, 625 (E.D. Pa. 2015) (granting motion for summary judgment on plaintiff's

claim for bodily injury allegedly sustained as a result of employer's failure to accommodate

disability); *McEwen v. UPMC Shadyside Presbyterian Hosp.*, No. 2:09-cv-1181, 2010 WL

4879195, at *7 (W.D. Pa. Nov. 23, 2010) (holding that plaintiff could not recover under the ADA

for personal injuries allegedly caused by the employer's failure to assign him to a sedentary position).  The remedy for such injuries "lies in tort or pursuant to the Worker's Compensation Act," not federal anti-discrimination laws.  *Smith v. Blue Cross Blue Shield of Kan., Inc.*, 102 F.3d 1075, 1077-78 (10th Cir. 1996).

Second, the WCA bars recovery for bodily injuries—including those alleged by Plaintiff here—except in the case of egregious employer conduct, such as where the employer knows that injury is substantially certain to result from that denial.  This exception to the exclusivity presumption applies "in only rare and extreme factual circumstances."  *Kibler v. Roxbury Bd. of Educ.*, 919 A.2d 878, 882 (N.J. Super. Ct. App. Div. 2007).  Thus, as the New Jersey Supreme Court has explained:

> [I]n order for an employer's act to lose the cloak of immunity of N.J.S.A. 34:15-8, two conditions must be satisfied: (1) the employer must know that his actions are substantially certain to result in injury or death to the employee, and (2) the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize.

*Laidlow v. Hariton Mach. Co.*, 790 A.2d 884, 894 (N.J. 2002).

Here, Plaintiff's allegations fail to establish either condition of the exception.  Both Plaintiff's discrimination and negligence claims are premised solely on allegations sounding in negligence, and it is "contrary to the very definition of 'negligence' to categorize [such a] claim within the 'intentional wrong' exception to the [WCA]."  *Birch v. Wal-Mart Stores, Inc.*, No. 15-1296 (CCC-JBC), 2015 WL 8490938, at *4 (D.N.J. Dec. 9, 2015) (Cecchi, J.).  Moreover, Plaintiff's conclusory statement that the NFL's actions were "intentional" and "substantially certain to result in injury," without any supporting allegations, cannot plausibly demonstrate that the exception to workers' compensation exclusivity should apply.  *See Shorter v. Quality Carrier*, No. 14-4906 (RBK/JS), 2014 WL 7177330, at *3 (D.N.J. Dec. 16, 2014) (holding that the

plaintiffs' "'threadbare recital' of the elements of an intentional wrong, coupled with legal conclusions," could not survive a motion to dismiss based on workers' compensation exclusivity (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009))).  Likewise, even if true, Plaintiff's allegation that the NFL had "knowledge that Plaintiff could not see well in lighted conditions without the use of a protective shield or glasses" and "also knew that Plaintiff was at risk above and beyond" the risks encountered by players without his alleged disability falls short of intentional wrong exception.  Am. Compl. ¶ 73.  "Mere knowledge . . . that a workplace is dangerous does not equate to an intentional wrong." *Van Dunk v. Reckson Assocs. Realty Corp.*, 45 A.3d 965, 978 (N.J. 2012).  Even proof of a "strong probability" of harm will not suffice. *Millison v. E.I. Du Pont de Nemours & Co.*, 501 A.2d 505, 514-15 (N.J. 1985).  Rather, "a virtual certainty" of harm is required.  *Id.*

Nor has Plaintiff alleged sufficient facts to establish the second prong of the intentional wrong exception.  Plaintiff's alleged injury while playing professional football could not possibly be viewed as "plainly beyond anything the Legislature" intended to immunize.  *See Bustamante v. Tuliano*, 591 A.2d 694, 698-99 (N.J. Super. Ct. App. Div. 1991); *see also Gambrell*, 562 S.W.2d at 166-68.  To the contrary, Plaintiff's injury is precisely "the type of . . . accident that . . . is a known danger in the industry."  *Estate of Sellino v. Pinto Bros. Disposal, LLC*, No. A-2064-12T1, 2013 WL 5300076, at *5 (N.J. Super. Ct. App. Div. Sept. 23, 2013); *Evans v. Ariz. Cardinals Football Club, LLC*, 262 F. Supp. 3d 935, 942 (N.D. Cal. 2017) (noting that "[i]n such a rough-and-tumble sport as professional football, player injuries" can be "inevitable").  Accordingly, Plaintiff's claims, which are based on alleged injuries sustained during the course and scope of Plaintiff's employment, are barred by workers' compensation exclusivity as a matter of law.

## III.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE LAD OR ADA

In addition to being preempted and barred by workers' compensation exclusivity, Plaintiff's state and federal disability claims fail as a matter of law.  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[B]lanket assertion[s] of entitlement to relief" are insufficient, as are labels, conclusions, plainly false allegations, and formulaic recitations of the elements of a cause of action.  *Id.* at 555 n.5; *Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")  Accordingly, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  Plaintiff's Amended Complaint fails to satisfy these fundamental standards of pleading and should therefore be dismissed with prejudice.

### A.    Plaintiff's Amended Complaint Fails To Allege That He Exhausted His Administrative Remedies As Required By The ADA

Plaintiff's federal disability discrimination claim fails at the threshold because Plaintiff failed to exhaust his administrative remedies.  Under the ADA, a plaintiff must file a charge of discrimination with the U.S. Equal Employment Opportunity Commission within 300 days of the alleged discriminatory act and receive a "right to sue" letter before filing a lawsuit.  42 U.S.C. § 2000e-5(e)(1).  "A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by [the ADA]: prior submission of the claim to the EEOC for conciliation or resolution." *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997).

20

Here, Plaintiff makes no reference to filing a complaint with the EEOC or the New Jersey Division of Civil Rights, as required by the ADA.  Accordingly, Plaintiff's ADA claim is barred because he failed to exhaust his administrative remedies.  *See, e.g.*, *Meggiolaro v. Lagniappe Pharmacy Servs.*, No. 2:16-cv-3407 (WJM), 2016 WL 5660432, at *2 (D.N.J. Sept. 29, 2016) (dismissing ADA claims where plaintiff failed to file a charge with the EEOC); *Gillespie v. Janey*, No. 2:09-cv-00885 (SDW)(MCA), 2010 WL 777954, at *3 (D.N.J. Mar. 5, 2010) (granting motion to dismiss ADA claims due to failure to exhaust), *aff'd*, 441 F. App'x 890 (3d Cir. 2011).

## B.     Plaintiff's Amended Complaint Fails To State A Claim For Disability Discrimination Under the ADA Or The LAD

Even if Plaintiff had exhausted his administrative remedies, his disability discrimination claims would fail.  To state a claim for disability discrimination under the LAD and the ADA, Plaintiff must allege facts that, if proved, would demonstrate that: (1) plaintiff was "a disabled person within the meaning of the [statute]"; (2) plaintiff was "qualified to perform the essential functions of the [position of employment], with or without reasonable accommodations"; and (3) plaintiff "suffered an … adverse employment decision [because of the disability]."  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (citation omitted); *see also Victor v. State*, 952 A.2d 493, 503 (N.J. Super. Ct. App. Div. 2008) (noting New Jersey courts "look to the substantive standards established under federal law for guidance, particularly the Americans with Disabilities Act"), *aff'd in relevant part*, 4 A.3d 126 (N.J. 2010).

Plaintiff pleads no facts to support the third element of his claims—that he suffered an adverse employment action because of his disability.  To establish an adverse employment action, a plaintiff must allege more than "something that makes [him] unhappy, resentful or otherwise cause an incidental workplace dissatisfaction."  *Victor*, 952 A.2d at 505; *see also El-*

*Sioufi v. St. Peter's Univ. Hosp.*, 887 A.2d 1170, 1184 (N.J. Super. Ct. App. Div. 2005) (holding that employment action "unaccompanied by a demotion or similar action, is insufficient" to be "adverse").  Instead, Plaintiff must plead that a specific action "materially alter[ed] the terms and conditions of [his] employment" and "deprive[d] [him] of any employment privileges or opportunities."  *Richter v. Oakland Bd. of Educ.*, 211 A.3d 1226, 1236 (N.J. Super. Ct. App. Div. 2019).  These typically include actions that result in an "employee's loss of status, a clouding of job responsibilities, diminution in authority, disadvantageous transfers or assignments, and toleration of harassment by other employees."  *Mancini v. Twp. of Teaneck*, 794 A.2d 185, 207-08 (N.J. Super. Ct. App. Div. 2002).

Plaintiff makes no such allegation here.  Indeed, the only adverse action alleged by Plaintiff is his contention that he was denied an accommodation, which led to his alleged personal injury.  But it is well-established that this is not a cognizable injury for purposes of a disability discrimination claim.  *See, e.g., Aponik,* 106 F. Supp. 3d at 625 (ADA does not provide remedy for personal injury allegedly caused by violation of statute); *Smith v. Blue Cross*, 102 F.3d at 1077-78 (same); *Richter,* 211 A.3d at 1236 (personal injury allegedly caused by employer's failure to accommodate disability is not "adverse employment action" under LAD).  His disability discrimination claims accordingly fail as a matter of law.

### C.    Plaintiff Fails To State A Claim For Failure To Accommodate

Plaintiff also has failed to state a "failure to accommodate" claim under the disability laws.  To state such a claim, Plaintiff must first allege sufficient facts to satisfy the elements of a disability discrimination claim, which, as explained above, he has not.  *See Rich v. Verizon N.J. Inc.*, No. 16-1895 (FLW) (DEA), 2017 WL 6314110, at *21 (D.N.J. Dec. 11, 2017) ("Plaintiff must first establish a prima facie case of discrimination under the ADA in order to recover for an alleged failure to accommodate.").

22

Yet even if Plaintiff could make this threshold showing, he also must allege facts that demonstrate he "requested accommodations or assistance for [his] disability," and that his "employer made no good faith effort to assist." *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 237 (D.N.J. 2015); *see also Royster v. N.J. State Police*, 152 A.3d 900, 910 (N.J. 2017) (to state a failure to accommodate claim under the LAD, plaintiff must show he made his employer "aware of the basic need for an accommodation," yet his employer "failed to provide a reasonable accommodation"). Plaintiff has not met this standard here. His lone allegation relating to his accommodation claim—that he "sought a reasonable accommodation *i.e.* the use of the protective shield in order [for him] to perform the requirements of his job" (Am. Compl. ¶¶ 43, 64) —is entirely conclusory and insufficient to save the claim. *See Semple v. Donahoe*, No. 13-5198 (ES), 2014 WL 4798727, at *4-5 (D.N.J. Sept. 25, 2014) (dismissing failure to accommodate claim where "pleadings completely omit the elements of disability discrimination in favor of broad-brush, conclusory allegations").

### D. Plaintiff's Amended Complaint Fails To State A Claim Against John Does 6-10 For Aiding And Abetting Discrimination

Plaintiff's Amended Complaint attempts to extend his claims to unidentified members of NFL "upper management" that Plaintiff alleges are individually liable for discrimination under an "aid[ing] and abet[ting]" theory of liability. Am. Compl. ¶ 88.

This new claim fails for two reasons. *First*, this Court has consistently held that there is no individual liability under the ADA. *See, e.g.*, *Peoples v. Montclair State Univ.*, No. 15-5511 (CCC)(MF), 2018 WL 646076, at *2 (D.N.J. Jan. 30, 2018) (Cecchi, J.) (dismissing ADA claims against 28 unnamed individual defendants); *DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 590 (D.N.J. 2015) (finding that there is no individual liability under the ADA). *Second*, there can be no aiding and abetting liability against an individual where the underlying claims against an

employer fail.  *See Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 856 (3d Cir. 2016) (citing

*Cicchetti v. Morris Cnty. Sheriff's Office*, 947 A.2d 626, 645 (N.J. 2008)).  As discussed *supra*

Section III B-C, the Amended Complaint fails to state a claim for disability discrimination or

failure to accommodate against the NFL.  This also mandates dismissal of those same claims

against the individual defendants.

However, even assuming Plaintiff has pled a disability discrimination claim against the

NFL under the LAD (and he has not), the law provides for individual liability only when "(1) the

party whom the defendant aids [performs] a wrongful act that causes an injury; (2) the defendant

[is] generally aware of his role as part of an overall illegal or tortious activity at the time that he

provides the assistance; [and] (3) the defendant [] knowingly and substantially assist[s] the

principal violation."  *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999).  Aiding

and abetting liability thus requires "active and purposeful conduct," *Tarr v. Ciasulli*, 853 A.2d

921, 928-29 (N.J. 2004), and an individual cannot be liable as an aider and abettor unless he or

she "provides 'substantial assistance' to [another individual committing NJLAD violations]."

Plaintiff's Amended Complaint alleges no facts about the individual defendants'

purported role in the alleged discrimination against Plaintiff, let alone facts that satisfy the

elements of an aiding and abetting claim.  Indeed, he is unable to identify even a single

individual by name.  *See* Am. Compl. ¶ 6 ("John Does 6-10 are/were people in upper

management of the NFL whose identities are presently unknown to Plaintiff"); *see Peoples*, 2018

WL 646076, at *2 (dismissing ADA claims against 28 unnamed individual defendants where the

complaint was "devoid of factual allegations" concerning their actions, "leaving the Court unable

to ascertain if and how the individual [d]efendants acted in their official capacities").  As such,

Plaintiff has failed to state a plausible claim for aiding and abetting discrimination.

**CONCLUSION**

For all of these reasons, the Court should dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

Dated: August 4, 2020

Respectfully submitted,

*/s/ Richard Hernandez*

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, New Jersey 07101-0652
(973) 622-4444
rhernandez@mccarter.com


**AKIN GUMP STRAUSS HAUER & FELD LLP**

Stacey R. Eisenstein (*Pro Hac Vice*)
Nathan J. Oleson (*Pro Hac Vice*)
M. Elizabeth England (*Pro Hac Vice*)
Robert S. Strauss Tower
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 887-4000

*Attorneys for Defendants*