# LAWRENCE N. LAVIGNE, ESQ., L.L.C.

2444 Morris Avenue, Suite 206
Union, New Jersey 07083
Telephone (908) 687-7750
Telefax (908) 687-7752
E-Mail: Larry@LNLavigneLaw.com
Website: LNLavigneLaw.com

Lawrence N. Lavigne*
Admitted in N.J. & N.Y.

Jignesh J. Shah
Of Counsel

*Certified by the New Jersey
Supreme Court as a
Civil Trial Attorney

September 22, 2020

*Via e-filing*
Hon. Claire C. Cecchi, U.S.D.J
MLK Jr. Federal Bldg. & U.S Courthouse
50 Walnut Street
Newark, New Jersey 07102

  Re: Rontez Miles v National Football League
     Civ Action No. 2:19-cv-18327 (CCC-MF)

Dear Judge Cecchi:

The undersigned represents Plaintiff Rontez Miles in the above-referenced matter. Please accept this letter in lieu of a more formal brief in opposition to the Defendant, National Football League's ("NFL" or "Defendant") motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). The motion is returnable on October 5, 2020. For the second time in this case, Defendant moves to dismiss Plaintiff's complaint on the same baseless grounds that this Court has already largely rejected. Defendant rehashes the same arguments it provided the last time and offers nothing new, which exposes its motion for what it really is: an attempt to further delay adjudication of Plaintiff's claims. Accordingly, for the reasons set forth below as well in Plaintiff's first opposition to

1

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

motion to dismiss, which is incorporated fully herein and on which Plaintiff relies, Plaintiff respectfully requests that this Court deny Defendant's motion to dismiss.

**LEGAL STANDARD**

A motion to dismiss brought under FRCP 12(b)(6) tests the legal sufficiency of a complaint. A complaint requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] 'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted). A complaint does not require detailed factual allegations; it simply must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In this case, Defendant argues again that Plaintiff's claims are pre-empted and must be dismissed per §301 of the Labor Management Relations Act ("LMRA") 29 U.S.C. §185 ("§301").[1] The NFL's position must be rejected.

---

[1] As discussed *infra*, the NFL through the same national counsel has unsuccessfully made this argument before, including in *Dent et als v. National Football League* 902 F.3d 1109 (9th Cir, 2018). *Dent* is one of the most recent circuit court decisions on the issue of §301 preemption. Notably, while it is a published opinion, it is not mentioned, let alone cited by the NFL.

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

On a Fed R. Civ. P. 12(b)(6) motion, only the complaint is reviewed, defenses are not considered. This includes Defendant's argument that a collective bargaining agreement ("CBA") is somehow implicated here. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 386 (1987), *Dent, supra at 1116.* Defendant's argument requires analysis of its defenses. As noted herein, the vast majority of the cases cited by Defendant were decided well after the pleading stage.

As set forth below, Plaintiff submits that he has pled sufficient facts for this Court to deny Defendant's motion.

**ARGUMENT**

**I.    PLAINTIFF'S CLAIMS DO NOT REQUIRE AN INTERPRETATION OF THE COLLECTIVE BARGAINING AGREEMENT AND THEREFORE CANNOT BE PREEMPTED BY THE LMRA.**

We note at the outset that Defendant seeks a FRCP 12(b)(6) dismissal relying primarily on cases issued at summary judgment or a later stage, not at the pleading stage. Even if one were to ignore this simple basis as to why Defendant's motion must fail, its arguments themselves do not support its position.

Defendant begins its analysis by citing *Allis Chalmers Corp. v Lueck*, 471 U.S. 202 (1985) for the proposition that §301 preempts state law when the claims that are "substantially dependent" on or "inextricably intertwined" with the terms of a collective bargaining agreement ("CBA"). Defendant's brief p.7. However, as Defendant concedes, this standard requires a finding

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

that §301 only applies if this court is required to "interpret" the terms of the CBA. *Id.* (citing *Snyder v Dietz & Watson, Inc.*, 837 F. Supp 2d. 428, 439 (D.N.J. 2011)). Similarly, Defendant's reliance on *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1536 (3d Cir. 1992) further reinforces the point that preemption is applicable only "if the resolution of a state-law claim **depends upon the meaning of a collective bargaining agreement.**" (emphasis added) *See also*, Defendant's citation to *Rutledge v. Int'l Longshoremen's Ass'n*, 701 F. App'x 156, 162n.2 (3rd Cir 2017) and others on page 13 of its brief in support of this principle in the Law Against Discrimination ("LAD") context.[2]

On the other hand, if Your Honor does not need to interpret the CBA, as Plaintiff submits is the case here, then Plaintiff's claims are not preempted by §301. Where Plaintiff and Defendant diverge is Defendant's distortion of what Plaintiff is asking this Court to determine and what Plaintiff actually seeks.

Defendant misrepresents that Plaintiff is asking "this Court to determine the parties' rights and obligations under their [CBA]." Defendant's brief p.8. This is simply not true. Defendant disingenuously inserts its "Official Playing Rules" into the equation in an attempt to bring Plaintiff's claims within the LMRA. For example, Defendant states, that

---

[2] It is difficult to discern if defendant is claiming that the CBA created any rights being asserted by Plaintiff in this matter or the second prong of the analysis, which would result in preemption only if the claims require interpretation of the CBA. It appears that Defendant skips the first prong entirely.

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

"Plaintiff's claims concern an injury that he asserts was caused when in accordance with the Official Playing Rules, an NFL equipment judge refused to allow him to wear an eye shield during the game." Defendant's brief p. 8.

Plaintiff does not cite or rely on the Official Playing Rules, nor is he asking this Court to determine the parties' rights and obligations under the CBA. To the contrary, Plaintiff seeks to hold Defendants responsible for violations of State and federal law. Whether Defendant's equipment judge was following the procedure set forth in in the NFL's "Official Playing Rules" is irrelevant here. Plaintiff has not alleged that the equipment judge was not following the Official Playing Rules. Plaintiff concedes that his request to wear a protective eye shield may not have been in compliance with the Official Playing Rules. To state it colloquially: "so what." The CBA has no bearing on Plaintiff's claims and nothing herein remains to be "interpreted" under it. The terms of the Official Playing Rules are presumably clear (and Plaintiff has no need to dispute them) and therefore, there is no need for this Court to interpret them. The issue is whether the NFL waived its right to rely on the rules by continually permitting Plaintiff to play in practice and regular season games wearing his protective shield. This is clearly a jury issue which §301 simply does not address.

In an excellent law review article, *Protecting Common Law*

*Rights of The Unionized Worker; Demystifying Section 301 Preemption,* 138 University of Baltimore Law Review vol. 46 pp 107-137 *by Phillip J. Closius (law professor, University of Baltimore Law School)* the author makes the point that $301 preempts tort claims which are in fact contract claims. Id at 109. This is not such a case. Rather, this case is based on rights conferred upon Plaintiff by New Jersey anti-discrimination statute and general tort (negligence) law. Defendant cannot overcome this simple fact.[3]

Even though it is Defendant's burden to persuade the Court that Plaintiff's Complaint requires an interpretation of the CBA, it has completely failed to supply any analysis of why the interpretation of CBA is needed here. It simply self-servingly concludes that a court must interpret the CBA to determine if the NFL had any duties in light of the allocation of responsibilities between various entities, none of which are the Defendant. Defendant's brief p.10. The question remains: why is any interpretation necessary?

Plaintiff has pled that he has utilized a protective eye shield his entire football career (which included three seasons in the NFL prior to his injury). First Amended Complaint ("Comp.") ¶¶24-25.  The NFL argues that it exerts and has

___
[3] While Defendants have cited a series of unpublished decisions to bolster its position, Professor Closius points out that many courts have misconstrued the breadth of $301 preemption.  Defendant attempts to exploit this misconstruction.

6

# LAWRENCE N. LAVIGNE, ESQ., L.L.C.

exerted control over equipment that players are permitted to use. Comp. ¶¶10-11. To wit, Defendant employs an equipment judge at each game to inspect players' uniforms and equipment, ostensibly, to ensure compliance with NFL's equipment rules. Comp. ¶29. For at least three (3) seasons NFL equipment judges have observed Plaintiff using a protective shield on his helmet and permitted him to do so in every game. Comp. ¶30. Through this action, Defendant had tacitly or implicitly approved Plaintiff's use of the protective shield regardless of the terms of its Official Playing Rules or any provision of the CBA. Comp. ¶¶32-24. It is utterly irrelevant whether under the CBA Defendant had any duty it breached or if the CBA conferred any specific rights on the parties.[4] Rather, by its continuous and consistent conduct in permitting Plaintiff to use a tinted face shield in every game for which he suited up, the NFL waived any provision of the CBA or NFL's Official Playing Rules addressing the issue. A waiver may result from a party's conduct. *See gen.*, *Mechants Ind. Corp. v Eggleston,* 37 N.J. 114, 130, 132 (insurance carrier waived right to control defense of a lawsuit and decide on settlement by its conduct in failing to assert its right to do so even in face of an allegations of fraud in the procurement of the policy).

*See Green v. Arizona Cardinals Football Club, LLC*, 21 F.

---

[4] Clearly, Plaintiff is not asserting any breach of any right by the NFL conferred by the CBA.

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

Supp. 3d 1020 (E.D. Mo. 2014). "The merits of the plaintiffs'
claims can be evaluated without interpreting any of the [CBAs']
terms." *Id.* at 1023. The plaintiff's claims were based on
common law duties to maintain a safe working environment, not to
expose employees to unreasonable risks of harm, and to warn
employees about the existence of dangers of which they could not
reasonably be expected to be aware. *Id.* at 1024. The CBA would
not have any bearing on these claims or Plaintiff's claims of
waiver. *Id.* at 1030. *Green* further held a CBA does not have any
bearing on common law duties of an employer "'to inform himself
of those matters of scientific knowledge' that relate to the
hazards of his business and to relay that knowledge to his
employees." *Id.* (citing *Marsanick v. Luechtefeld*, 157 S.W.2d 537
(Mo. Ct. App. 1942)).

Similarly, the 9th Circuit in *Dent, supra*, held that
Plaintiffs' (who were retired NFL players) claims were not
preempted by §301 as the claims were predicated on state laws
concerning prescription medications and other claims based on
state tort law including negligence. The Court found that the
claims made by Plaintiffs did not arise from any contract,
including the CBA, nor was any interpretation of the CBA
necessary. This is the same in this case.

Likewise, in *Dent* the 9th Circuit rejected the NFL's
argument which it makes in this case, that in order to determine

8

"duty" in the negligence context, the court must determine the obligations of the NFL and its member teams pursuant to the CBA. The Court indicated that while the CBA addressed certain issues concerning player health and safety, the CBA does not "address the NFL's liability" for causing injury to the players. 902 F. 3d, at 111. This is what Plaintiff claims in this action; the NFL caused his injury.

At best, the NFL can argue that the Court might need to refer to the CBA in some way. Referencing a CBA and interpreting a CBA are two different things. *See Williams v. N.F.L.*, 582 F. 3d 863, 876-77 (8th Cir. 2009) (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124-25 (1994)) (holding that mere consultation to a CBA "is insufficient to warrant preemption of an otherwise independent state law claim." Reading the CBA, without interpretation, reveals what Plaintiff is willing to concede: the CBA contains a procedure for requesting a protective shield to be attached to a player's helmet. *See Brown v. Holiday Stationstores, Inc.*, 723 F. Supp. 396, 407 (D. Minn. 1989)(determining that, by mere reference to the CBA, LMRA preemption was improper where the plaintiff's claim sought redress for discrimination on the basis of handicap, and the CBA in question "contained no provision protecting the rights of handicapped workers").

Moreover, to the extent that any requirement in the CBA was

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

implicated, Defendant by its actions waived it.  In addition to the facts stated above, it should be noted that Plaintiff was also subjected to numerous physical exams by the New York Jets ("Jets"), the team Plaintiff played for at the time of the injury. Comp. ¶18.  In the report of his last medical exam and believed to be noted in each exam from his previous three (3) seasons with Jets, is a section titled "Past Ocular History," which notes Plaintiff's condition. Comp. ¶19.  As the NFL is essentially a cooperative, the knowledge of the Jets must be imparted to the NFL.  Accordingly, Defendant was fully aware of Plaintiff's condition and his continued use of the tinted eye shield to block light and protect him from the adverse effects of light for three years.  By Plaintiff's fourth year, due to its continued acquiescence in Plaintiff's use of the shield, Defendant had waived any CBA requirement addressing this issue.

Unable to satisfy its burden of persuasion that the state court claims are pre-empted by §301 (See Williams, supra, 582 F.3d at 880) on the basis of the Amended Complaint, Defendant turns to its status as Plaintiff's co-employer.  Defendant contends that its status as a co-employer requires interpretation of the CBA.  This argument again attempts to avoid rights derived not from the CBA but from state and federal law.  Defendant argues that Plaintiff's player contract with the Jets "expressly states that the Club, and not the NFL is the

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

Player's employer." Defendant's brief, p.13-14.  This is akin to
an employer contending that if an employee signs a contract
stating that he/she is an independent contractor, then no matter
how much control the "employer" exerts over the individual, that
employee is an independent contractor because the contract says
so.  Regardless, how the player contract between Plaintiff and
the Jets requires an interpretation of the CBA is not explained
by the Defendant.  It is also likely that Defendant's reference
to a document not referenced or relied on in the Complaint
converts this motion into one for summary judgment.  It must be
stated that although Defendant argues that Player's contract
explicitly states that NFL is not the employer, it then (in the
very next point) argues that Plaintiff's claims are barred by
the workers' compensation exclusivity because it is an employer.
The status of the relationship is based upon New Jersey law, not
the unilateral assertions of the NFL, which contravene such law.

Given that this Court need not interpret any provision of
the CBA nor do any claims raised by Plaintiff arise from the
CBA, it is respectfully submitted that §301 does not preempt
Plaintiff's NJLAD or ADA claims and the motion must be denied.

**II. WHETHER PLAINTIFF'S CLAIMS ARE BARRED BY WORKERS'
COMPENSATION EXCLUSIVITY REQUIRES A DETERMINATION THAT DEFENDANT
IS AN EMPLOYER WHICH CANNOT BE DECIDED IN A RULE 12(b)(6) MOTION
TO DISMISS.**

After arguing that Plaintiff's player contract expressly

states that Defendant is not Plaintiff's employer, Defendant contends that Plaintiff's claims against it are barred by exclusivity of the New Jersey Worker's Compensation Act, *N.J.S.A.* 34:15-1 *et seq.* ("WCA"). Defendant asserts that because Plaintiff has alleged that it is his co-employer, Defendant should gain all the benefits of that status, but none of the obligations that come with it. *See* Defendant's brief p.17. Within the same motion, Defendant has created a disputed fact, whose resolution is necessary to determine whether Plaintiff's claims can be dismissed at this stage.

Defendant has refused to concede that it is an employer; it has argued the opposite. *See* Defendant's brief, p.13-14. If Defendant is not an employer, the WCA does not apply.

Moreover, while Defendant appears to suggest that the exclusivity provision of the WCA always bars all claims by employees against employers, this is not true. *See Laidlow v. Hariton Mach. Co., Inc.*, 170 N.J. 602, 605 (2002) (explaining that every conduct by employer is not immune from a common-law suit); *N.J.S.A.* 34:15-8.  The New Jersey Legislature has declared that "an employer who causes the death or injury of an employee by committing an "intentional wrong" will not be insulated from common-law suit." *Id.* at 605-606 (citing *N.J.S.A.* 34:15-8).  In *Laidlow*, the Court explained that an "intentional wrong" can be shown, not only by proving a subjective desire to

12

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

injure, but also by a showing, based on all the facts and circumstances of the case, that the employer **knew an injury was substantially certain to result.**" 170 N.J. at 614, 617 (emphasis added). Furthermore, there is a crucial second prong: a court must also assess "whether the injury and the circumstances surrounding it were part and parcel of everyday industrial life or plainly outside the legislative grant of immunity." *Id.* at 614-615, 617.

Here, the facts and circumstances known at this earliest stage of litigation are that Defendant owed Plaintiff a duty to provide a safe workplace. After allowing Plaintiff to use the protective equipment for three (3) years, Defendant, suddenly and at game time, refused to permit Plaintiff to use the protection he had used during his entire career. Defendant knew that because of Plaintiff's health condition, this refusal would create an unsafe situation for Plaintiff when playing a violent sport like professional football under bright stadium lights. In short, Defendant knew or should have known that injury would occur because of Plaintiff's vision issues. Defendant's action made it substantially certain for Plaintiff would be injured.[5] His intense photosensitivity would preclude his ability to see approaching players under many circumstances. Plaintiff did in

---

[5] Defendant argues that football is a recognized dangerous activity. Yet, it ignores that it increased the risk of injury to Plaintiff by all of a sudden denying him the use of his protective face shield.

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

fact suffer severe and permanent personal injuries, as a result of, Defendant's action.   Working in an environment, without proper safety equipment, cannot be said to be part and parcel of everyday work life.   Accordingly, Plaintiff has alleged sufficient facts to sustain his complaint at this stage of the litigation.

The Court in *Laidlow* noted, whether the removal of a safety guard can meet the intentional wrong standard is a case-by-case determination and a jury issue on substantial certainty. 170 N.J. at 619.   Only Defendant can shed light on what appreciation it had concerning the risk of injury associated with its decision to bar Plaintiff from wearing a safety visor, needed as a result of, his medical condition. *See id.*

> The appreciation of danger can be obtained in a myriad of ways other than personal knowledge or previous injuries. Simply because people are not injured, maimed or killed every time they encounter a device or procedure is not solely determinative of the question of whether that procedure or device is dangerous and unsafe. If we were to accept the appellee's reasoning, it would be tantamount to giving every employer one free injury for every decision, procedure or device it decided to use, regardless of the knowledge or substantial certainty of the danger that the employer's decision entailed. . . . It is not incumbent that a person be burned before one knows *not* to play with fire. *Id.* at 621 (quoting *Cook v. Cleveland Electric Illuminating Co.*, 102 Ohio App. 3d 417 (1995)).

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

This is impossible until discovery is had on this issue.

Moreover, New Jersey Supreme Court has reiterated and explained *Laidlow's* expansion in *Crippen v. Central Jersey Concrete Pipe Co.*, 176 N.J. 397, 410 (2003). There, the Court found that an employer's failure to properly implement a permit-required confirmed space entry-program created a substantial certainty that an injury or death would result from the dangerous conditions of the confined spaces. *Id.* Thus, *Laidlow* and its progeny demonstrate the New Jersey's clear commitment to appraise an employer's conduct and remove the exclusivity bar to an employee's claim of negligence in appropriate cases.

Accordingly, and based on the facts and circumstances of this case known at this initial pleading stage of litigation, it is clear that Plaintiff has pled sufficient facts to sustain the Complaint under the exception to the exclusivity bar of the WCA.

## III. PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO SUPPORT HIS CLAIMS OF DISABILITY DISCRIMINATION.

Defendant alleges that Plaintiff did not submit his discrimination claim under the Americans with Disabilities Act ("ADA") to the U.S. Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged discriminatory act and received a "right to sue" letter before filing this suit. Defendant relying on unpublished cases, asserts that failure to satisfy this prerequisite means Plaintiff cannot

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

maintain a disability discrimination claim under the ADA.

Plaintiff concedes that he did not file his discrimination claim under the ADA with the EEOC within 300 days of the discriminatory act. The reason is Plaintiff commenced this suit in state court for violation of the New Jersey Law against Discrimination ("NJLAD"), where there is no such requirement. When Defendant removed the complaint to federal court, Plaintiff added the ADA claims because for the same reasons that Defendant committed disability discrimination against Plaintiff under the NJLAD also exist under the ADA.

Whether under the ADA or the NJLAD, the analysis of whether Plaintiff has stated a claim for disability discrimination remains the same. The ADA's discrimination sections require litigants to establish that they are qualified individuals with disabilities. The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12101(1) It goes on to explain that [a]n individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a

16

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

major life activity. *Id.* §12102(3)(A).

To establish a prima facie case of disability discrimination under the NJLAD based on a failure to accommodate, a plaintiff must only establish that 1) he is disabled within the meaning of the NJLAD; and 2) he was qualified for the job; *See Richter v. Oakland Bd. Of Educ. Richter v. Oakland Bd. of Educ.*, 459 N.J. Super. 400 (App. Div.), ____ *certif. granted* ____ (2019) (holding that no adverse employment action is required to establish failure to accommodate claim under New Jersey law); cf. *Conoshenti v. Public Service Elec. & Gas Co.*, 364 F.3d 135, 150 (3d Cir. 2004) (quoting *Bosshard v. Hackensack University Medical Center*, 345 N.J. Super. 78, 91 (App. Div. 2001)); but *see Seiden v. Marina Assocs.*, 315 N.J. Super 451 (App. Div. 1998) (concluding *McDonnell Douglas* disparate treatment analysis not necessary in failure to accommodate disability claim).

Defendant is well aware of *Richter*, because it cited it in its brief. Defendant's brief p.22.  Rather than identifying the case's holding for this Court and its applicability to the facts of this case, Defendant disingenuously uses it to imply that an adverse employment action is required to sustain a claim for disability discrimination based on a failure to accommodate. *See id.*

Defendant's sole argument in support of its position that

**17**

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

Plaintiff cannot support a claim for disability discrimination under the LAD is that he failed to plead facts to support an adverse employment action. As noted above, currently this is no longer required under New Jersey law.

In *Richter*, plaintiff, a middle school teacher, suffered from Type 1 diabetes. 459 N.J. Super. at 407. During the 2012-2013 school year, Plaintiff was assigned to cafeteria duty, which meant she could only eat her lunch from 1:05 p.m. to 1:49 p.m. *Id.* at 408. Given her medical condition, the plaintiff believed that eating lunch that late in the day would negatively impact her blood sugar levels and she asked the principal to permit her to eat lunch earlier in the day. *Id.* The principal did not accommodate this request and refused to change the schedule, nor did the employer engage in a (documented) interactive discussion regarding plaintiff's accommodation request. Subsequently, the plaintiff suffered from a hypoglycemic episode that caused her to have a seizure, become unconscious and hit her head and face on a table and the floor, which resulted in serious and permanent injuries. *Id.* at 409.

The Appellate Division found that the plaintiff was under no obligation to demonstrate that she suffered an adverse employment action to sustain her claim for failure to accommodate her diabetes under the NJLAD because she was "forced to 'soldier on' and continue working without an accommodation.

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

*Id.* at 416 (quoting *Victor v. State*, 203 N.J. 383, 421 (2010)).

> Given the LAD's broad remedial
> purposes, the Court believed that it
> was time to "chart a course to permit
> plaintiffs to proceed against employers
> who have failed to reasonably
> accommodate their disabilities or who
> have failed to engage in an interactive
> process even if they can point to no
> adverse employment consequence that
> resulted. Such cases would be unusual,
> if not rare, for it will ordinarily be
> true that a disabled employee who has
> been unsuccessful in securing an
> accommodation will indeed suffer an
> adverse employment consequence." *Id.* at
> 414-15 (quoting *Victor*, 203 N.J. at
> 421).

The Appellate Division found that the plaintiff's circumstances "cry out for a remedy." *Id.* at 416 (citing 203 N.J. at 421).[6]

Similarly, the facts before this Court are such that it cries out for a remedy. It cannot be disputed that Plaintiff's condition is a disability. With respect to major life activities, in the ADA Amendments Act of 2008 (ADAAA), Congress added a non-exhaustive list to the statute. "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, **seeing**, [and] hearing." 42 U.S.C. § 12102(2)(A)(emphasis added). Under Title I of the ADA, a "qualified individual" is "an individual who, with or without

---

[6] The Appellate Division also discussed the fact that the Worker's Compensation statue and the NJLAD address different issues hence both claims can be brought within the same lawsuit.

Case 2:19-cv-18327-JXN-JSA  Document 30  Filed 09/22/20  Page 20 of 22 PageID: 537
LAWRENCE N. LAVIGNE, ESQ., L.L.C.

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

he would not be permitted to play in the game. Comp. ¶36. This same judge had permitted Plaintiff to utilize the shield and had not indicated to Plaintiff or the Jets in the past, that the eye shield was a violation of Defendant's rules or that Plaintiff would not be permitted to play with the shield in use. Comp. ¶37. This judge was advised by Plaintiff or was otherwise aware of Plaintiff's medical condition and the need to wear the protective shield. Comp. ¶39. Despite, the equipment official's clear knowledge of Plaintiff's medical condition/disability and the need to wear the protective shield, the official demanded that Plaintiff remove the shield or not play in the game. Comp. ¶40. Plaintiff sought a reasonable accommodation *i.e.* the use of the protective shield in order to perform the requirements of his job. Comp. ¶43. Defendant, through its official, denied Plaintiff a reasonable accommodation. Comp. ¶44.

Nothing more need be pled to support a failure to accommodate claim. Plaintiff has pled what Defendant demands, *i.e.* that he made his employer "aware of the basic need for an accommodation, yet his employer "failed to provide a reasonable accommodation." Defendant's brief p.23 (quoting *Royster v. N.J. State Police*, 227 N.J. 482, 500 (2017)). Accordingly, Plaintiff has unequivocally stated a "failure to accommodate" disability discrimination claim under the ADA and the NJLAD.

LAWRENCE N. LAVIGNE, ESQ., L.L.C.

## CONCLUSION

Based on the forgoing it is respectfully requested that
Defendant's motion be denied in its entirety.

Respectfully submitted,

Lawrence N. Lavigne
Jignesh J. Shah

22