UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RONTEZ MILES, | : | |
| Plaintiff, | : | Civil Action No. 2:19-cv-18327(JXN)(JSA) |
| v. | : | |
| | : | OPINION |
| THE NATIONAL FOOTBALL LEAGUE, *et al* | : | |
| Defendants. | : | |

**NEALS**, District Judge:

This matter comes before the Court on the Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 26] filed by Defendant the National Football League (the "NFL"), to which Plaintiff Rontez Miles ("Plaintiff") filed opposition [ECF No. 30], to which the NFL replied [ECF No. 32]. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons stated herein, the NFL's Motion to Dismiss [ECF No. 26] is **GRANTED**.

I.   FACTUAL BACKGROUND

This matter involves a dispute between Plaintiff and the NFL. Plaintiff is a professional football player signed to the New York Jets ("NY Jets"). Am. Compl. ¶ 1. The NFL is a professional sports league consisting of thirty-two football teams, including the NY Jets. *Id.* ¶¶ 3, 5. Plaintiff is a member of the National Football League Players Association ("NFLPA"), which is the exclusive bargaining representative of all NFL players, including Plaintiff. *Id.* ¶ 7;

1

Def.'s Br. at 2, ECF No. 26-1.  Plaintiff's employment with the NY Jets was in accordance with a collective bargaining agreement ("CBA") between the NFL and the NFLPA.  *Id.* ¶ 8.[1]

According to the NFL, the CBA governs the respective rights and responsibilities of the NFL, the Clubs, the NFLPA, and the players with respect to, among other subjects, player health and safety, player attire and equipment, and the remedies and benefits available to players in the event of an injury sustained while performing services under an NFL Player Contract, including during the course of an NFL game.  Def.'s Br. at 2-3 (citing Am. Compl. ¶¶ 8-9; *see, e.g.*, CBA, Art. 41, § 1, Art. 51, § 2).  The CBA requires NFL players and Clubs to follow the rules promulgated by the NFL concerning the operation of the game.  *Id. See* Am. Compl. ¶¶ 5, 9 (alleging that the NFL "promulgated rules, regulations, policies and procedures controlling most aspects of each teams' business conduct, their players and staff," including rules "which players such as Plaintiff are required to follow in order to play football in the NFL").  The NFL Rules set forth detailed standards for player equipment and uniforms.  *Id.* (citations omitted).

Plaintiff alleges that he suffers from a medical condition known as alopecia areata, which he claims causes him to experience ocular photosensitivity and photophobia and limits his ability to see well in sunlight or artificial light.  Am. Compl. ¶¶ 13-15, 41.  For at least three football seasons, Plaintiff used a protective shield on his helmet while practicing or playing football.  *Id.*

---

[1] On a motion to dismiss pursuant to Rule 12(b)(6), the court may consider the complaint and documents referenced in or attached to the complaint.  *See In re Asbestos Prods. Liability Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) ("In deciding motions under Rule 12(b)(6), courts may consider 'document[s] integral to or explicitly relied upon in the complaint,' *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), or any 'undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document,' *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)."). In the present case, the NFL submitted the Collective Bargaining Agreement negotiated between the NFL Players Association and the NFL Management Council on August 4, 2011 as an exhibit to the declaration of Lawrence P. Ferazani, Jr. in support of the NFL's notice of removal.  Ferazani Decl., Ex A., ECF No. 1-2.  Plaintiff's Amended Complaint expressly refers to the CBA and the CBA is integral to Plaintiff's allegations that the NFL "waived" provisions or requirements in the CBA or the Official Playing Rules.  *See, e.g.,* Am. Compl. ¶ 81.  Although Plaintiff disputes whether his claim require interpretation of the CBA, Plaintiff does not challenge the authenticity of the CBA.  Thus, the court may consider the CBA without converting the motion to dismiss to a motion for summary judgment because the CBA is "integral to or explicitly relied upon in the complaint."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

¶¶ 28, 30.  On August 19, 2017, Plaintiff claims that an NFL equipment judge demanded that he remove the protective shield from his helmet or he would not be permitted to play in the game. *Id*. ¶¶ 35-36.  Plaintiff played in the game without the shield and alleges that, "due to the lack of protection from the stadium lights, [he] did not see an opposing player approach, and hence, was unable to take defensive maneuvers." *Id*. ¶¶ 45-46.  As a result, Plaintiff alleges that "[t]he opposing player [made contact with his] face causing severe and significant injury," including a "broken orbital bone of the right eye." *Id.* ¶¶ 47-48

Two years after his injury, Plaintiff filed this action in the Superior Court of New Jersey asserting claims for (1) disability discrimination under the New Jersey Law Against Discrimination ("LAD"); (2) failure to provide a reasonable accommodation under the LAD and the Americans with Disabilities Act ("ADA"); and (3) negligence.  *See* Compl., ECF No. 1-1.  The NFL timely removed the case to this Court and Plaintiff filed an Amended Complaint.  In the Amended Complaint, Plaintiff alleges the following claims: (1) Defendants violated the LAD by discriminating based on Plaintiff's disability; (2) Defendants violated the LAD and Section 12101 of the Americans with Disabilities Act ("ADA") by failing to provide reasonable accommodation to Plaintiff; (3) Defendants were negligent; (4) Defendants waived any provision or requirement in the CBA when they allowed Plaintiff to play in the NFL for at least three seasons utilizing a protective shield without specific approval from the NFL; (5) Plaintiff's claims do not depend on an interpretation of the CBA, and (6) John Does 1-5 and John Does 1-6 are liable to Plaintiff for previously stated LAD and ADA violations.  Am. Compl. ¶¶ 56-62, 63-68, 69-78, 79-81, 82-84, 85-90.

The NFL now moves to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiff's claims are preempted by Section 301 of the

Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), because the allegations are inextricably intertwined with the CBA and incorporated Official Playing Rules.  Def.'s Br. at 8.

## II.     LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotations omitted).  In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all the facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  *Id.*

While this standard places a considerable burden on the defendant seeking dismissal, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  That is, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Id.*  Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  In order to determine whether a complaint is sufficient under these standards, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must

assume the veracity of well-pleaded factual allegations and ascertain whether they plausibly give rise to a right to relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

### III. DISCUSSION

#### A. Counts One, Two, and Six: Violations of the New Jersey Law Against Discrimination and Americans with Disabilities Act

In Count One of the Amended Complaint, Plaintiff alleges a violation of New Jersey Law Against Discrimination. Am. Compl. ¶¶ 56-62. Plaintiff alleges that he was discriminated against because of his disability and that he suffered "severe personal injury, severe emotional distress and economic/pecuniary injuries." *Id.* 58-62. In Count Two, Plaintiff alleges violations of the LAD and ADA. Specifically, Plaintiff alleges that the NFL failed to provide a reasonable accommodation for his disability in order to perform the duties of his employment. Am. Compl. ¶ 67. In Count Six, Plaintiff alleges that employees or agents aided and abetted the NFL in violating the LAD and ADA. *Id.* ¶ 88. The NFL moves to dismiss these counts, arguing that Plaintiff's claims cannot be resolved without interpreting the CBA and the incorporated Official Playing Rules. Def.'s Br. at 20, ECF No. 26-1.

Section 301(a) of the LMRA provides for federal jurisdiction over disputes regarding collective bargaining agreements. 29 U.S.C. § 185(a). More importantly, § 301 "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988). "Because § 301 requires the creation of uniform federal labor law to ensure uniform interpretation of collective bargaining agreements, and because state laws might produce differing interpretations of the obligations imposed by such agreements, the Supreme Court has held that 'a suit in state court alleging a violation of a provision of a labor contract must be

brought under § 301 and be resolved by reference to federal law.'" *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 437-38 (D.N.J. 2011) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)).

Therefore, "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is preempted" by federal labor law. *Lingle*, 486 U.S. at 406. And this preemption is not limited to contracts claims. Instead, the Supreme Court has held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," even in the context of tort claims, the claim is preempted by § 301 and must be decided pursuant to federal labor contract law. *Medley v. Atl. Exposition Servs., Inc.*, 550 F. Supp. 3d 170, 191 (D.N.J. 2021) (citing *Allis–Chalmers* 471 U.S. at 220).

Against that legal background, the NFL argues that Plaintiff's LAD claims are preempted because the Court must address the legal effect of the collectively bargained Player Contract and interpret the CBA to determine whether there is a "legally recognizable employment relationship between" Plaintiff and the NFL. Def.'s Br. at 26-1 at 21. The NFL further argues that a Court also would need to analyze the CBA and the incorporated Official Playing Rules to determine whether the NFL had a legitimate, non-discriminatory reason for its alleged refusal to permit Plaintiff to wear the shield. *Id.* (citing *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833 (N.J. 2002)).

In support of its argument, the NFL points to the New Jersey Supreme Court's decision in *Maher v. N.J. Transit Rail Operations*, 593 A.2d 750, 751 (N.J. 1991). (Def.'s Br. 17.) In *Maher*, the plaintiff, who was legally blind in his right eye, alleged that the New Jersey Transit Rail Operations violated the LAD by requiring him to wear protective eyeglasses, which he

claimed further hindered his eyesight. *Id.* at 753.  The court held that the Railway Labor Act ("RLA"), which has the same preemptive force as the LMRA, preempted the plaintiff's state LAD claim. *See Voilas v. GMC*, 170 F.3d 367, 375 (3d Cir. 1999) (explaining that the standards for preemption under the RLA and LMRA are "virtually identical" (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994))).  In so doing, the court explained that because the CBA provided that New Jersey Transit Rail Operations employees must comply with all safety rules, the plaintiff's state LAD claim hinged on interpreting the CBA provision regarding working conditions as well as assessing "conduct [of the parties] in following provisions of the collective-bargaining agreement." *Maher*, 593 A.2d at 763-64.

In response, Plaintiff argues that his claims do not require an interpretation of the collective bargaining agreement and therefore cannot be preempted by the LMRA. Pl.'s Br. at 3, ECF No. 30.  Simply put, Plaintiff argues that the CBA has no bearing on his claims and the Court does not need to interpret the CBA or the Official Playing Rules. *Id.*

Plaintiff's LAD and failure to accommodate claims are preempted by the LMRA because they require the Court to interpret policies found in the CBA and the Official Playing Rules.  In order to establish a *prima facie* case of disability discrimination under the NJLAD, a plaintiff must demonstrate:

> (1) plaintiff was handicapped or disabled within the meaning of the statute; (2) plaintiff was qualified to perform the essential functions of the position of employment, with or without accommodation; (3) plaintiff suffered an adverse employment action because of the handicap or disability; and (4) the employer sought another to perform the same work after plaintiff had been removed from the position.

7

*Rich v. State*, 294 F. Supp. 3d 266, 278 (D.N.J. 2018).[2]  As alleged in the Amended Complaint, Plaintiff is employed by the NY Jets and his employment with the NY Jets is in accordance with a CBA between the NFL and the NFLPA.  Am. Compl. ¶ 8.  The CBA governs each party's respective rights and responsibilities regarding player health and safety, player attire and equipment.  *Id.*  ¶¶ 8-9.  To adjudicate Plaintiff's disability discrimination claim, the Court must address the legal effect of the collectively bargained Player Contract and interpret the CBA to determine whether there is a "legally recognizable employment relationship between" Plaintiff and the NFL for purposes of the LAD.  *See Freeman v. Duke Power Co.*, 114 F. App'x 526, 532 (4th Cir. 2004) (finding wrongful discharge claim preempted where analysis of CBA was required to determine "what type of employment relationship existed" between the parties).  The Court will also have to interpret at least some portion of the Official Playing Rules since the claim is in part based on equipment policies created by the NFL.  *Id.*; *see Maher*, 593 A.2d at 763-64.

Moreover, to adjudicate Plaintiff's failure to accommodate claim, the Court will have to interpret the CBA to determine whether the NFL had any obligations under the CBA or incorporated documents to make certain accommodations for Plaintiff.  Accordingly, the Court finds that Plaintiff's LAD and failure to accommodate claims substantially depend on whether the NFL's actions were aligned with the CBA and are therefore preempted under section 301 of the LMRA.  *See Boldt v. N. States Power Co.*, 904 F.3d 586, 593 (8th Cir. 2018) (finding the plaintiff's state law claim was preempted because the claim substantially depended on whether the employer's actions were aligned with the CBA).

---

[2] A plaintiff must also demonstrate these factors to establish a *prima facie* case of failure to accommodate.  *Rich*, 294 F. Supp. 3d at 278.

8

With respect to Plaintiff's ADA claims that are vaguely asserted in Counts Two and Six, Plaintiff concedes that he did not file a charge of discrimination with the EEOC, which is a mandatory prerequisite to suit under the ADA. Pl.'s Br. at 16 ("Plaintiff concedes that he did not file his discrimination claim under the ADA with the EEOC within 300 days of the discriminatory act."); *see* 42 U.S.C. § 2000e-5(e)(1). Because there is no dispute that Plaintiff did not file an EEOC charge and obtain a right to sue letter, Plaintiff's ADA claims must be dismissed for failure to exhaust his administrative remedies. *See Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997); *Robinson v. Univ. of Med. & Dentistry of N.J.*, No. 06-1158 (WJM), 2006 WL 3371748, at *2 (D.N.J. Nov. 17, 2006) (dismissing ADA claims where there was "no dispute that Plaintiff failed to file an EEOC charge and obtain a right to sue letter").

Accordingly, Counts One, Two, and Six are dismissed with prejudice.

### B. Count Three: Negligence

At issue here is whether Plaintiff's negligence claim is sufficiently independent of the collective-bargaining agreement to withstand the pre-emptive force of § 301. Plaintiff's claim is based on the allegation that the NFL owed a duty of care "to help him avoid injury while playing football" and that the NFL breached that duty when it "prohibited him from utilizing protective equipment." Am. Compl. ¶¶ 70-74. In its motion, the NFL contends that "whether the NFL has a duty to 'help [Plaintiff] avoid injury,' if any, in this context, can only be ascertained by interpreting provisions in the CBA and Official Playing Rules, which carefully allocate responsibilities for player safety and medical care among the NFL, the NFLPA, the Clubs, the Club physicians, and the players." Def.'s Br. at 9. The Court agrees.

As outlined by the New Jersey Supreme Court, "[t]he fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty

9

by the defendant, injury to the plaintiff proximately caused by the breach, and damages. *Robinson v. Vivirito*, 217 N.J. 199, 208 (2014). In *Allis–Chalmers*, 471 U.S. at 202, the Supreme Court instructed that the preemptive scope of § 301 must be "fleshed out on a case by case basis" and held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Id.* at 220; *see also Guerrero v. Hovensa LLC,* 259 F. App'x 453, 457 (3d Cir. 2007). Section 301 preempts negligence claims where the court must interpret the CBA to determine the "nature and scope of [any] duty" of care that the defendant agreed to assume and whether the defendant, by its actions, breached that duty. *See Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 862 (1987).

As set out in Plaintiff's Amended Complaint, Plaintiff is a professional football player employed by the NY Jets. Am. Compl. ¶¶ 7-8, 12. The NFL is a professional sports league consisting of thirty-two football teams, including the NY Jets. *Id.* ¶¶ 3, 5. The NFLPA is the exclusive bargaining representative of all NFL players, including Plaintiff. *Id.* ¶ 7. Plaintiff's employment with the NY Jets was in accordance with a collective bargaining agreement ("CBA") between the NFL and the NFLPA. *Id.* ¶ 8. The CBA governs the respective rights and responsibilities of the NFL, the Clubs, the NFLPA, and the players with respect to, among other subjects, player health and safety, player attire and equipment, and the remedies and benefits available to players in the event of an injury sustained while performing services under an NFL Player Contract, including during the course of an NFL game. Am. Compl. ¶¶ 8-9; *see, e.g.*, CBA, Art. 41, § 1, Art. 51, § 2. The CBA requires NFL players and Clubs to follow the rules promulgated by the NFL concerning the operation of the game. *See* Am. Compl. ¶¶ 5, 9 (alleging that the NFL "promulgated rules, regulations, policies and procedures controlling most

aspects of each teams' business conduct, their players and staff," including rules "which players such as Plaintiff are required to follow in order to play football in the NFL"). Plaintiff alleges that the NFL "waived any provision or requirement in the Collective Bargaining Agreement, Player Rules and other related documents concerning Plaintiff's use of a protective shield" by "permitting Plaintiff to play in the NFL for at least three seasons utilizing the protective shield on his helmet without specific approval." Am. Compl. ¶ 80.

By Plaintiff's own admission, his employment with the NY Jets was in accordance with a collective bargaining agreement ("CBA") between the NFL and the NFLPA. Thus, to resolve Plaintiff's negligence claim, the Court would have to interpret provisions of the CBA, Official Playing Rules and documents related to player's equipment and safety to determine whether the NFL owed Plaintiff a duty of care as alleged in his Amended Complaint. It would also require an analysis of the terms of the relevant documents to determine (1) whether the NFL acted in accordance with the provisions by not allowing Plaintiff to wear a shield on his helmet during the game; and (2) whether the NFL waived any provisions in the CBA conceding Plaintiff's use of the shield. Thus, the Court finds that Plaintiff's negligence claim is inextricably intertwined with and substantially dependent upon an analysis of certain provisions in the CBA and therefore is preempted under section 301.

The Court's conclusion is consistent with numerous courts who have held that the LMRA preempts negligence claims where, as here, the nature and extent of any duty of care owed by the NFL to Plaintiff cannot be determined "without examining the parties' legal relationship and expectations as established by the CBA." *Williams v. Nat'l Football League, Inc.*, 582 F.3d 863, 881 (8th Cir. 2009); *see also Duerson v. Nat'l Football League*, No. 12-cv-2513, 2012 WL 1658353, at *3-6 (N.D. Ill. May 11, 2012) (scope of NFL's liability for negligence claims based

on player injuries requires interpretation of CBA provisions to determine whether they "impose a duty on the NFL's clubs to monitor a player's health and fitness to continue to play football," allowing the NFL, in turn, to "reasonably exercise a lower standard of care.").

Accordingly, Count Three is dismissed with prejudice.

### C. Counts Four and Five

In Count Four, "Plaintiff demands that a judgment be entered against Defendants declaring that it waived any provision or requirement in the Collective Bargaining Agreement, Player Rules and other related documents." Am. Compl. at 9 ("Wherefore"). In Count Five, Plaintiff further demands "that a judgment be entered against Defendants declaring that Plaintiff's claims do not require interpretation of and/or are not dependent on interpretation of any provision or requirement in the Collective Bargaining Agreement, Player Rules and other related documents." *Id.* at 10. Rather than assert a specific state or federal cause of action, Plaintiff seeks to circumvent section 301 by alleging that the NFL waived provisions of the CBA and that his claims do not require the Court to interpret the CBA. To the contrary, Plaintiff's claim that the NFL waived provisions in the CBA further demonstrates that the CBA governs Plaintiff's claims and that the Court must interpret the provisions contained therein to determine the parties' rights, duties, and obligations thereunder.

Moreover, Plaintiff cannot plead around preemption by alleging that his claims do not require interpretation of the CBA. *See* Am. Compl. ¶¶ 82-84. If resolution of Plaintiff's claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, the Plaintiff's claim must either be treated as a § 301 claim or dismissed as preempted by federal labor-contract law despite Plaintiff's pleas to the contrary. *See Allis–Chalmers*, 471 U.S. at 220. To that end, Counts Four and Five of Plaintiff's Amended

12

Complaint do not support any legally cognizable cause of action and are dismissed with prejudice.[3]

## IV. CONCLUSION

For the foregoing reasons, the NFL's Motion to Dismiss [ECF No. 26] is **GRANTED**.[4] An appropriate Order accompanies this Opinion.

DATED: November 21, 2022

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge

---

[3] Although Counts Four and Five are not preempted under section 301, dismissal with prejudice is appropriate because they are dependent on the preempted claims and because Plaintiff made no effort to state a legally cognizable claim.

[4] Nothing in this Opinion shall be construed to preclude Plaintiff from resolving his grievances in accordance with the CBA.

13